[No. 216-3.    Division Three.    March 26, 1971.]

THE STATE OF WASHINGTON, *on the Relation of* CLYDE K. KERL, *Appellant,* v. HARLAND G. HOFER, *Respondent.*

J. P. Tonkoff (of Tonkoff & Dauber), for appellant.

P. Cameron Devore (of Davis, Wright, Todd, Riese & Jones) and Alan McDonald (of Halverson, Applegate, McDonald, Bond & Grahn), for respondent.

EVANS, J.—This appeal is from an order quashing an order to show cause and dismissing a petition for contempt citation.

The chronology of material events which preceded the order appealed from are as follows:

March 26, 1969—the plaintiff Clyde K. Kerl filed an action of medical malpractice against the defendant Harland G. Hofer in Yakima County cause No. 52258.

April 14, 1969—the cause was set for trial by agreement of counsel for December 3, 1969.

September 6, 1969—certain articles relating to medical malpractice suits were published in the Seattle Times and Seattle Post-Intelligencer. The articles purported to be based upon interviews with Dr. Donald T. Hall, chairman of the Washington State Medical Association, and James K. Wellman, general manager in Seattle for the Aetna Life & Casualty Company. The substance of the articles can be gleaned from their headlines. The Seattle Post-Intelligencer article was headlined "Malpractice Suits Spiral; Insurance Company to Quit?" The Seattle Times article was headlined "Increase in Court Suits Plague Doctors".

On September 10, 1969 the Seattle Times published a followup article under the headline "Insurance Figures on Malpractice Suits Challenged", and on September 12, 1969 the Seattle Post-Intelligencer published a similar article under the headline "Attorney Raps Claim About Malpractice". Both answering articles contained quotations from Mr. Leon Wolfstone, president of the American Trial Lawyers Association, taking issue with several statements contained in the original articles. The record reflects that an article similar to those published by the Seattle Times

and the Seattle Post-Intelligencer and a corresponding response by Mr. Pete Tonkoff, attorney for plaintiff herein, were published by the Yakima Herald Republic. None of the articles referred to any particular case of alleged malpractice.

Approximately 3 months later, on *December 4, 1969,* a petition for contempt citation entitled "State of Washington ex rel. Clyde K. Kerl v. Harland G. Hofer" was filed in the malpractice case of Kerl v. Hofer, cause No. 52258. The petition was signed by Clyde K. Kerl and alleged a conspiracy among the parties named therein to unlawfully influence prospective jurors and those of the general public who will in the future be selected to hear evidence in malpractice cases. The petition further alleged:

> That your petitioner has a meritorious cause of action against the above named defendant but that the parties referred to herein have jeopardized his right of recovery of damages and that the parties referred to herein have been in contempt of court and should be required to appear and show cause, before the above entitled court, why they should not be held guilty of contempt of court.

A show cause order was issued ex parte on the same day the petition for contempt was filed, citing the parties referred to in the petition, namely, the Seattle Post-Intelligencer and Dan Starr, its publisher; the Seattle Times and J. A. Blethen, its publisher; Dr. Donald T. Hall, chairman of the Washington State Medical Association, and James K. Wellman, asserted (but denied by Mr. Wellman) to be an officer of the Aetna Life & Casualty Company, to appear and show cause why they should not be held in contempt of court "and punished in accordance with the merits of this case". The return date fixed in the show cause order was *December 19, 1969.* The above cited parties are referred to herein as respondents.

The malpractice case of Kerl v. Hofer, set for trial on December 3, 1969, did not come to trial. The reason is not stated in the record but the argument of counsel for respondents that the parties had at that time—the day before the petition for contempt citation was filed—reached an

agreement and settlement is, to some extent, supported by the fact that on *December 10, 1969* a judgment of dismissal was entered therein, as follows:

> [The above entitled matter having come on regularly to be heard upon the application of the parties hereto for the entry of a judgment and order of dismissal with prejudice and without costs, and it appearing to the court that all matters in controversy between the parties have been fully settled and compromised and there is no further reason for the cause to remain pending,
>
> IT IS ORDERED that the above entitled action of the plaintiff against the defendant shall be and the same hereby is dismissed with prejudice and without costs;
> . . .

Respondents' motion for dismissal of the contempt proceedings came before the court on the return date set in the show cause order. Following arguments of counsel, the trial judge took the matter under advisement. In a memorandum decision rendered shortly thereafter the court granted respondents' motion to dismiss the contempt proceedings, based upon several grounds. We need consider only the first one, namely, the trial court's ruling that this is a civil contempt proceeding brought under RCW 7.20, arising out of and filed in the malpractice cause of Kerl v. Hofer, No. 52258, and that the order dismissing that cause, based upon the settlement of all controversy between the parties "carried with it and destroyed any possibility of any pending contempt proceedings".

Appellant concedes the contempt proceedings were brought under RCW 7.20.010(9), which provides:

> Contempt of court defined. The following acts or omissions, in respect to a court of justice or proceedings therein, are deemed to be contempts of court:
>
> . . .
>
> (9) Any other unlawful interference with the process or proceedings of a court.

As to the nature of the contempt alleged, the Supreme Court in *Keller v. Keller*, 52 Wn.2d 84, 86, 323 P.2d 231 (1958), stated:

In general, contempt proceedings in this jurisdiction may be placed in three categories: (a) criminal contempt prosecuted under RCW 9.23.010; (b) civil contempt initiated under RCW 7.20.010 *et seq.;* and (c) contempt proceedings resulting from the long-exercised power of constitutional courts (1) to punish summarily contemptuous conduct occurring in the presence of the court, (2) to enforce orders or judgments in aid of the court's jurisdiction, and (3) to punish violations of orders or judgments.

While it thus appears the Supreme Court has held that contempt proceedings brought under RCW 7.20.010 are civil in nature, appellant argues that the contempt here alleged was brought on behalf of the state and not for the benefit of a private party, and is thus not dependent on any underlying private litigation to sustain the court's jurisdiction. He contends that other language in *Keller v. Keller, supra,* indicates the classification of contempt brought under RCW 7.20 as "civil" was so labeled merely as a matter of expediency; that such contempt proceedings are civil only in the sense they allow a private attorney to initiate the proceedings; that the only difference between a case brought under RCW 7.20 and a case brought under RCW 9.23 is that the former is initiated by a private party rather than the prosecuting attorney, and that the remedy sought is the same, namely, fine or imprisonment. In support of the latter contention appellant relies upon RCW 7.20.020, which provides:

Punishment—General. Every court of justice and every judicial officer has power to punish contempt by fine or imprisonment, or both. But such fine shall not exceed three hundred dollars, nor the imprisonment six months; and when the contempt is not of those mentioned in RCW 7.20.010(1) and (2), it must appear that the right or remedy of a party to an action, suit or proceeding was defeated or prejudiced thereby, before the contempt can be punished otherwise than by a fine not exceeding one hundred dollars.

However, the punitive remedy of fine or imprisonment provided in RCW 7.20.020 is not exclusive. RCW 7.20.100 provides:

Indemnity to injured party. If any loss or injury to a party in an action, suit or proceeding prejudicial to his rights therein, have been caused by the contempt, the court or judicial officer, in addition to the punishment imposed for the contempt, may give judgment that the party ,aggrieved recover of the defendant a sum of money sufficient to indemnify him, and to satisfy his costs and disbursements, . . .

■ Plaintiff Kerl in his petition alleged that the actions of respondents in publishing articles relating to malpractice cases prejudiced his right of recovery of damages. Thus, if plaintiff could establish that publication of the articles was contempt of court and caused a loss or injury to plaintiff, he would be entitled to judgment for a sum of money sufficient to indemnify him to the extent allowed by RCW 7.20.100. Such a judgment would be remedial in nature. Under these circumstances we are of the opinion the present contempt proceedings are civil rather than criminal.

As to whether a dismissal of the underlying malpractice cause terminated the contempt proceedings we must look to other jurisdictions since no Washington decisions in point have been called to our attention.

■ In 17 Am. Jur. 2d *Contempt* § 49 (1964) the rule is stated:

Effect of settlement by parties.
Since the complainant in the main cause is the real property (*sic*) in interest with respect to a compensatory fine or other remedial order in a civil contempt proceeding, if for any reason he becomes disentitled to the further benefit of the order, the civil contempt proceeding must be terminated. Inasmuch as the proceeding was not instituted to punish for a contumacious act in vindication of the court's authority, the court has no such independent interest in maintaining in force its order imposing ,a compensatory fine as would justify the court in transmuting the proceeding into one for criminal contempt, with the fine regarded as punitive. Thus, courts have held that at least with respect to a civil contempt, on settlement of the main cause of which the contempt proceedings based on violation of an injunction were a part, the contempt proceedings must terminate.

(Footnotes omitted.)

In 17 C.J.S. *Contempt* § 68 (1963) the rule is similarly stated:

It is generally held that civil contempt proceedings terminate when the suit in which the contempt arose is abated or finally disposed of, as by reversal. In a civil contempt proceeding, complainant in the main cause is the real party in interest with respect to a remedial order, and if for any reason complainant becomes disentitled to the further benefit of such order, the civil contempt proceeding must be terminated.

(Footnotes omitted.)

A leading case in point is *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 451-452, 55 L. Ed. 797, 31 S. Ct. 492 (1911). In that case the defendant Samuel Gompers and others were found guilty of contempt by the trial court for making certain publications prohibited by an injunction. The court stated:

[I]t is both unnecessary and improper to make any decree in this contempt proceeding.

For on the hearing of the appeal and cross appeal in the original cause in which the injunction was issued, it appeared from the statement of counsel in open court that there had been a complete settlement of all matters involved in the case of *Buck's Stove & Range Company* v. *American Federation of Labor et al.* This court therefore declined to further consider the case, which had become moot, and those two appeals were dismissed. 219 U. S. 581. When the main case was settled, every proceeding which was dependent on it, or a part of it, was also necessarily settled—of course without prejudice to the power and right of the court to punish for contempt by proper proceedings. *Worden* v. *Searls,* 121 U. S. 27. If this had been a separate and independent proceeding at law for criminal contempt, to vindicate the authority of the court, with the public on one side and the defendants on the other, it could not, in any way, have been affected by any settlement which the parties to the equity cause made in their private litigation.

But, as we have shown, this was a proceeding in equity for civil contempt where the only remedial relief possible was a fine payable to the complainant. The company

prayed "for such relief as the nature of its case may require," and when the main cause was terminated by a settlement of all differences between the parties, the complainant did not require and was not entitled to any compensation or relief of any other character. The present proceeding necessarily ended with the settlement of the main cause of which it is a part. *Bessette v. Conkey,* 194 U. S. 328, 333; *Worden v. Searls,* 121 U. S. 27; *State v. Nathans,* 49 S. Car. 207 [27 S. E. 52]. The criminal sentences imposed in the civil case, therefore, should be set aside.

The same result was reached in *New Jersey Zinc Co. v. Local 890 of Int'l Union of Mine Workers,* 57 N.M. 617, 261 P.2d 648 (1953); *Harris v. Texas & Pac. Ry.,* 196 F.2d 88 (7th Cir. 1952); *Pacific Gamble Robinson Co. v. Minneapolis & St. Louis Ry.,* 92 F. Supp. 352 (D. Minn. 1950), and *De-Rienzo v. Borrelli,* 178 Misc. 752, 36 N.Y.S.2d 641 (1942).

Following what appears to be the majority rule we, therefore, hold that when the underlying malpractice cause of Kerl v. Hofer, No. 52258 was dismissed with prejudice based upon a settlement of all matters in controversy between the parties, the pending civil contempt proceedings brought under RCW 7.20 were necessarily terminated.

Affirmed.

MUNSON, C.J., and GREEN, J., concur.