KIRBY L. ALLEN, ET AL, *Respondents,* v. AMERICAN
LAND RESEARCH, ET AL, *Appellants.*

*Charles K. Wiggins* and *William M. Robinson,* for appellants.

*Roger M. Leed* and *Michael W. Gendler,* for respondents.

SOULE, J.*—American Land Research and Federated Land Research, California corporations, and Alexander J. Myers and Marion Myers, husband and wife, who are California residents, appeal from a judgment in favor of the plaintiffs. Defendants also appeal from two orders finding them in contempt for failing to comply with orders made in aid of collection of the underlying judgment.

The transactions which gave rise to this litigation involve a plan to sell land in the Mojave Desert. In aid of the sales, two Washington corporations, Seattle Investment Co., Inc., and Seattle Investment Corporation, were used as brokers and all of the transactions of which complaint is made were handled for the California principals through these duly

---

*Judge Hardyn B. Soule is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

licensed Washington brokers. In consequence, the Washington corporations, together with their controlling individuals, their brokers, and a salesman, were made parties defendant. However, in the third week of the trial a compromise was reached with respect to the local corporations and some of the individuals, and they were dismissed from the action. The case then proceeded against the remaining defendants.

Ultimately the court found that the California defendants had defrauded the named plaintiffs, a conclusion which is amply supported by the record.

A portion of the case proceeded through the Superior Court as a class action. After extremely complex pretrial proceedings, the class claims actually tried related to only claims under the Washington Consumer Protection Act (RCW 19.86) and under the federal Interstate Land Sales Full Disclosure Act (15 U.S.C. § 1701 *et seq.*). A number of other claims were either dismissed or compromised prior to and during trial.

After trial, the court found in favor of the class on its claims for violation of the Consumer Protection Act. The claims under the Interstate Land Sales Full Disclosure Act were dismissed for lack of evidence. The named plaintiffs were also given judgment on a common–law fraud theory but this judgment did not cover the class members other than the named plaintiffs.

The trial court's judgment directed restitution and required that a trust fund be established by the appellants for the benefit of the members of the class. Attorney fees and costs were also awarded to the respondents. Subsequently, after the appellants refused to comply with portions of the judgment and an order to appear for examination, two hearings were held which resulted in findings that all the appellants were in contempt with respect to the first order and Alexander Myers was in contempt because he failed to appear for examination as ordered. These contempt citations are also on appeal.

The first issue raised is whether the transactions involved in this case are exempt from the Consumer Protection Act as that statute existed between 1971 and 1974. Because all of the transactions in controversy in this case took place prior to 1974, we are not called upon to and do not comment upon the effect of amendments to the statute made in 1974.

■ The basic position of the appellants is that their activities, however questionable, were not subject to the Consumer Protection Act in effect at the relevant time because of the exemption provisions of RCW 19.86.170.[1] Appellants argue that their activities were "otherwise permitted, prohibited or regulated" by another "regulatory body," the real estate division of the Department of Licensing which acted under the authority of RCW 18.85. With great reluctance, we conclude that the appellants' position is well taken in view of the way the statute was written.

The findings of fact entered by the trial court in this matter are clear. All of the activities of the appellants were undertaken with the primary purpose of inducing people in Washington to purchase desert land in California. It is land, not promotional materials or anything else, which the appellants were selling and it was the sales which proximately caused the injuries. Although the individual appellants were California residents who were not licensed to sell real estate by the State of Washington, the trial court found, as previously noted, that the sales in this state were made using agents who were properly licensed. Likewise, the corporate defendants made their sales in Washington only through licensed sales agents. The activities of these

[1]Until it was amended in 1974 the pertinent part of the statute read: (*See* Laws of 1967, ch. 147.)

"Nothing in this chapter shall apply to actions or transactions otherwise permitted, prohibited or regulated under laws administered by the insurance commissioner of this state, the Washington public service commission, the federal power commission or any other regulatory body or officer acting under statutory authority of this state or the United States:"

sales agents were subject to control by the real estate division, although apparently no actual control was exercised.

It is incumbent on us to determine whether these facts, in light of the interpretations given the statute, are sufficient to trigger the exemptions which were contained in RCW 19.86.170. Analysis of this matter requires consideration of two separate questions.

The first inquiry is whether there was "any other regulatory body" involved in this transaction. This matter was considered in *State v. Reader's Digest Ass'n,* 81 Wn.2d 259, 501 P.2d 290 (1972). In that case the Supreme Court discussed the term "regulatory body" in the context of a public body which controls entry into an occupation or activity and monitors that activity. Real estate sales transactions are regulated transactions under this rule. Persons selling real estate for others are required to be licensed under RCW 18.85.100. Their activities, and thus the activities of the principals who employ them, are controlled, or are at least subject to control, by other provisions of RCW 18.85.

The second element necessary to support the claim of exemption is the presence of an action or transaction otherwise "permitted, prohibited or regulated." The presence of an action or transaction is hardly disputed. The essential question thus becomes whether the actions are sufficiently permitted, prohibited or regulated to give rise to the exemption. In *Dick v. Attorney General,* 83 Wn.2d 684, 521 P.2d 702 (1974), the Supreme Court did indicate that to trigger the exemption, the regulation must be directed at the particular activity complained of. *See also Washington Osteopathic Medical Ass'n v. King County Medical Serv. Corp.,* 78 Wn.2d 577, 478 P.2d 228 (1970). Unfortunately, we are unable to say that the particular activity complained of in this case is not regulated. At all pertinent times RCW 18.85.230[2] prohibited printing and distribution of false materials and commission of fraud in

---

[2]RCW 18.85.230 was derived from Laws of 1967, ch. 22, § 3 and amended by Laws of 1971, 2d Ex. Sess., ch. 139, § 19. The text herein set out is from the later

the course of real estate transactions. According to the findings of fact, these were exactly the activities the appellants engaged in, in concert with their local brokers and agents.

Even beyond the statute, moreover, the director of motor vehicles had in effect, during the relevant time period, a regulation which provided for filing and review of promotional materials used in interstate land sales. WAC 308–124–130.[3] Appellants clearly violated this regulation and just as clearly the specifically complained of activities are

---

enactment and shows the changes made to the 1967 text. Those changes are not material insofar as this case is concerned.

"Sec. 19. Section 19, chapter 252, Laws of 1941 as last amended by section 3, chapter 22, Laws of 1967 and RCW 18.85.230 are each amended to read as follows:

"The director may, upon his own motion, and shall upon verified complaint in writing by any person, investigate the actions of any person engaged in the business or acting in the capacity of a real estate broker, associate real estate broker, or real estate salesman, regardless of whether the transaction was for his own account or in his capacity as broker, and may temporarily suspend or permanently revoke or deny the license of any holder who is guilty of:

". . .

"(2) Violating any of the provisions of this chapter or any lawful rules or regulations made by the director pursuant thereto;

". . .

"(4) Making, printing, publishing, distributing, or causing, authorizing, or knowingly permitting the making, printing, publication or distribution of false statements, descriptions or promises of such character as to reasonably induce any person to act thereon ((to his damage or injury)), if the statements, descriptions or promises purport to be made or to be performed by either the licensee or his principal and the licensee then knew or, by the exercise of reasonable care and inquiry, could have known, of the falsity of the statements, descriptions or promises;

"(5) Knowingly committing, or being a party to, any material fraud, misrepresentation, concealment, conspiracy, collusion, trick, scheme or device whereby any other person lawfully ((relying)) relies upon the word representation or conduct of the licensee ((acts to his injury or damage));"

[3]WAC 308–124–130 stated:

"Subdivision advertising—filing with director. Any licensee before offering for sale improved or unimproved land, belonging to others, in lot sizes of less than ten acres, *within or without the state,* subdivided into twenty or more lots, shall:

"(1) Provide the director with copies of any and all prospective advertising information, promotional materials, brochures and like material depicting the existing property, or as it is to exist, which might cause or tend to induce the sale thereof; and

purportedly regulated by it. This distinguishes the present case from cases like *Salois v. Mutual of Omaha*, 90 Wn.2d 355, 581 P.2d 1349 (1978), which involves activities not directly regulated.

We are unable to find anything in the statute which requires that regulation of an activity be both active and effective before the exemption statute becomes operative. The addition of such a limitation to the exemption statute is a matter for the legislature, not for this court. In accordance with RCW 19.86.920, we may properly give the statute a liberal interpretation but we cannot amend it. We are not to read into statutes things which are not there even if it appears that the legislature omitted something by oversight. *Knowles v. Holly*, 82 Wn.2d 694, 513 P.2d 18 (1973). This is particularly true where, as here, the class claim is a purely statutory one which had no common–law equivalent. *Johnston v. Beneficial Management Corp. of America*, 85 Wn.2d 637, 538 P.2d 510 (1975).

Since the relief granted to the class in this case was granted solely under the Consumer Protection Act theory, our holding that the activities of the appellants were exempt from the reach of the Consumer Protection Act requires reversal of the judgment granted to the class in this case.[4] Because of this holding, we do not need to reach

---

"(2) State the manner in which such materials are to be circulated to the public.

"The licensee shall further provide the director with copies of additions to or changes of all materials referred to in subparagraph (1) during the entire period of time that said land continues to be offered for sale.

"This regulation shall not apply to land which the owner or owners thereof have subdivided for the purpose of constructing, or causing to be constructed, upon all the lots situated therein, residential, commercial, or industrial buildings for immediate sale. PROVIDED, that the director may waive the above requirements and accept a notice of intention to subdivide or like document filed in other states or with the federal government. (Rule 13, filed 6/28/67.)" (Italics ours.)

[4]Respondents allude to an alleged failure by the appellants to properly preserve the exemption issue for review. In essence, they argue the findings of fact are not sufficient to support appellants' position. However, the exemption is a

most of the other issues raised by the parties (See observations in footnote 5, *infra*). Two further items require discussion, however.

■ Appellants challenge the award of costs and attorney fees found in the judgment. As far as we can determine from the record, the only basis for the award of attorney fees in this case is RCW 19.86.090.[5] The award of attorney fees authorized is an award to a successful litigant. *See Tradewell Stores, Inc. v. T.B. & M., Inc.*, 7 Wn. App. 424, 500 P.2d 1290 (1972). It follows, therefore, that the attorney fee award must fall with the underlying judgment. RCW 4.84.010.

The matter of costs is somewhat different. Both the named plaintiffs and the class were awarded relief. The named plaintiffs recovered on fraud claims separate from

legal conclusion based on facts. As shown above, the findings are sufficient to support a conclusion that an exemption exists.

[5]RCW 19.86.090 states:

Any person who is injured in his business or property by a violation of RCW 19.86.020, 19.86.030, 19.86.040, 19.86.050, or 19.86.060, or any person so injured because he refuses to accede to a proposal for an arrangement which, if consummated, would be in violation of RCW 19.86.030, 19.86.040, 19.86.050, or 19.86.060, may bring a civil action in the superior court to enjoin further violations, to recover the actual damages sustained by him, or both, together with the costs of the suit, including a reasonable attorney's fee, and the court may in its discretion, increase the award of damages to an amount not to exceed three times the actual damages sustained: *Provided*, That such increased damage award for violation of RCW 19.86.020 may not exceed one thousand dollars. For the purpose of this section 'person' shall include the counties, municipalities, and all political subdivisions of this state.

Whenever the state of Washington is injured by reason of a violation of RCW 19.86.030, 19.86.040, 19.86.050, or 19.86.060, it may sue therefor in the superior court to recover the actual damages sustained by it and to recover the costs of the suit including a reasonable attorney's fee.

Although we do not further address the issue in this proceeding, we note that the trial court granted the relief of rescission in this private action although the foregoing statute authorizes only an action to enjoin further violations and to recover "actual damages." *Cf. Johnston v. Beneficial Management Corp. of America*, 85 Wn.2d 637, 538 P.2d 510 (1975) and *Hockley v. Hargitt*, 82 Wn.2d 337, 510 P.2d 1123 (1973).

The remedy of rescission is authorized only by RCW 19.86.080 which grants other and broader powers to the Attorney General.

the Consumer Protection Act claims. The named plaintiffs ought to recover their costs incurred in the prosecution of the fraud claim to the extent authorized by RCW 4.84. We remand for determination of the amount of these costs.

The other matter requiring discussion is the validity of the contempt orders. Since the two contempt orders are based on somewhat different facts, discussion of each of them is necessary.

The first contempt order was based on the appellants' refusal to deposit funds into an account which, under the terms of the judgment, the appellants were to establish for the benefit of the class. While the parties dispute the validity of that part of the judgment requiring creation of the account, we do not reach this question because we find that our reversal of the underlying judgment also requires reversal of this contempt order.

■ Contempt orders are basically of three kinds. They may be criminal contempts punished under RCW 9.23.010 *et seq.*, civil contempts initiated under RCW 7.20.010 or invocation of the court's inherent power to summarily punish contemptuous conduct occurring in the presence of the court so as to enforce its orders or judgments or to enforce orders in aid of the court's jurisdiction. *Keller v. Keller*, 52 Wn.2d 84, 323 P.2d 231 (1958). The present contempt order is one entered to cause a party to obey a judgment. The order is thus effective to aid in vindication of a private right of the respondents to collect money due under the judgment as opposed to a public right. We hold that since the reason for the coercion falls when the underlying money judgment is reversed, the contempt order must also be reversed. *See State ex rel. Kerl v. Hofer*, 4 Wn. App. 559, 482 P.2d 806 (1971).

In our view, the opinions in *Dike v. Dike*, 75 Wn.2d 1, 448 P.2d 490 (1968) and *Mead School Dist. 354 v. Mead Educ. Ass'n*, 85 Wn.2d 278, 534 P.2d 561 (1975) do not require a result different from that we reach. While a well reasoned dissent in the *Mead School Dist.* case perhaps expresses the better rule, we find both cases distinguishable

from the present case. In both of the earlier cases, the contempt orders were punitive rather than coercive. Where the contempt order is nothing but a collection tool, as in the present case, it does not survive reversal of the underlying judgment.

The second contempt order was entered after the appellant Myers failed to appear for a supplemental proceeding instituted pursuant to RCW 6.32. The trial court entered an order which purported to allow service of its order to appear to be made by delivering the same to appellant's attorney. Appellant Myers was, at all relevant times, residing in California and was in California when service was effected in Seattle on his attorney.

We hold that this second contempt order must be reversed for three separate reasons. The first of these is that the contempt order was entered to enforce collection of the judgment and must fall with it.

■ The second basis for reversal of this contempt citation relates to the provisions of RCW 6.32. RCW 6.32.130 and 6.32.140[6] are specific in requiring personal service of orders to appear for examination. While the statute is a remedial one, the supplemental proceedings procedure is a creature of statute. *Arnold v. National Union of Marine Cooks & Stewards Ass'n,* 42 Wn.2d 648, 257 P.2d 629 (1953). Under the statute, service of the order must be made upon someone who could be served with process. *State ex rel. Canal Tire Co. v. Hall,* 120 Wash. 449, 207 P.

---

[6]RCW 6.32.130 states:

"Service of Orders. An injunction order or an order requiring a person to attend and be examined made as prescribed in this chapter must be served,—

"(1) By delivering to the person to be served a certified copy of the original order and a copy of the affidavit on which it was made;

"(2) Service upon a corporation is sufficient if made upon an officer, to whom a copy of a summons must be delivered. Where an order is personally served upon a corporation, unless the officer to be served is specially designated in the order, the order may be served upon any person upon whom a summons can be served."

RCW 6.32.140 reads:

"Service of Warrant. The sheriff, when he arrests a judgment debtor by virtue of a warrant issued as prescribed in this chapter, must deliver to him a copy of the warrant and of the affidavit upon which it was granted."

685 (1922). Service in this case did not conform to this requirement.

In our view, this case involves a traditional supplemental proceeding under RCW 6.32 as opposed to an ancillary proceeding of the type discussed in *State v. Ralph Williams' North West Chrysler Plymouth, Inc.,* 87 Wn.2d 327, 553 P.2d 442 (1976). The *Ralph Williams*–type proceeding is authorized by RCW 19.86.080. Only the Attorney General is entitled to proceed under this statute. Other litigants are subject to the ordinary rule that the supplemental proceeding statute is the exclusive method for obtaining the relief obtainable by a supplemental proceeding. *Knettle v. Knettle,* 164 Wash. 468, 3 P.2d 133 (1931). Service was thus insufficient.

The third basis for reversal of the second contempt order is that the order appellant Myers was found in contempt for violating required that he appear for a supplemental proceeding in Seattle when his residence was located in Los Angeles, California. RCW 6.32.190 prevents examination of a debtor outside the county of his residence. While the court may have acquired personal jurisdiction over Mr. Myers, this should not be confused with the question of whether there is a statutory restriction on supplemental proceedings which prevents them from occurring outside the county of the debtor's residence.

The situation of a judgment debtor is analogous to that of an out–of–state defendant whose presence is sought at a deposition to be taken in Washington. In such a case the defendant may not be compelled to appear in the state. *State ex rel. Onishi v. Superior Court,* 30 Wn.2d 348, 191 P.2d 703 (1948). It would be anomalous to protect in–state debtors but not those from out of state. We therefore hold that Mr. Myers could not be compelled to appear in the State of Washington for a supplemental proceeding even if he were properly served.

In summary, we find that the underlying judgment in favor of the class must be reversed since the transactions in

dispute were exempt from the reach of the Consumer Protection Act. The judgment for attorneys fees must fall with the main judgment. Likewise, the two contempt orders appealed from must be reversed. We remand solely for the purpose of allocating the statutory costs taxed in this matter between the class claims, which are not recoverable, and the common–law fraud claims, which are recoverable.

REED, C.J., and PETRIE, J., concur.

Reconsideration denied May 28, 1980.

Review granted by Supreme Court September 5, 1980.

[No. 3535–II.  Division Two.  April 25, 1980.]