# Commonwealth ex rel Zimmerman v. Nickel

116

*Leroy S. Zimmerman, Attorney General, Ernest J. DiSantis, Jr., Deputy Attorney General* and *Gary H. Nash*, for plaintiff.

*Arthur D. Feldman, Herman M. Rodgers*, for defendants.

FORNELLI, *J.*, January 24, 1983—

## FACTS

Defendants have demurred to plaintiff's complaint in equity. The complaint requests a permanent injunction to restrain defendants from unfair methods of competition and unfair acts or practices in their business of selling memberships in their

recreational campground known as Plantation Park.

Plaintiff's complaint alleges as improper:

1. Defendants induce potential customers to visit Plantation Park by mailing them notice that they have won a prize in one of three categories and to claim the prize the prospect must personally visit plaintiff's sales office;

2. Upon arrival, the prospect is given a two to three hour sales presentation which includes "relay salesmanship" (several sales persons individually and jointly deal with the prospect) to wear the prospects' sales resistence;

3. Defendants fail to provide a right of rescission in their contracts and advise purchasers that there is no right of rescission as required by the Pennsylvania Unfair Practices and Consumer Protection Law, 73 P.S. §201-7; that defendants do, however, have a "silent" cancellation policy and do, in fact, cancel a large number of contracts (exceeding 30 percent) and that this discriminates against purchasers and cancellation depends on how vigorously the purchaser presses for cancellation;

4. The prospects must sign a confession of judgment note for the deposit amount at the time of executing the purchase contract, but are not provided a three-day right of rescission as alleged to be required by the Federal Truth in Lending Act (Consumer Credit Protection Act, 15 U.S.C.A. §1601 et seq.) and Regulation Z (12 C.F.R. 226.23);

5. The sales presentation and contracts create a likelihood of confusion and misunderstanding by the use of the terms "mortgage" and "lease" when, in fact, all that is sold is a membership with the right to use facilities upon advance notice, reservations and compliance with other rules;

6. Defendants fail to conspicuously and clearly disclose the number of lots developed and available for use by members or the number of memberships to be sold per each developed lot;

7. That the financial contracts violate the Pennsylvania Goods and Services Installment Sales Act (69 P.S. §1101 et seq) by charging an annual percentage rate in excess of 15 percent.

Defendants demur that the above does not set forth a cause of action under the Unfair Trade Practices and Consumer Protection Law and it fails to allege how competitors of defendants, if any, are placed in a disadvantageous position; that no right of rescission exists with respect to real property; that no cause of action has been plead under the Truth in Lending Act because there is no allegation of any security interest to be taken by defendants in the principle residence of the customer; that no cause of action under the Pennsylvania Goods and Services Installment Sales Act exists because it is not alleged that defendants sell "goods" or "services" within the meaning of the act.

Defendants also move to strike Count IV as merely restatement of Count I and further, raise plaintiff's lack of capacity to sue under the Truth in Lending Act.

## DISCUSSION

A demurrer admits all relevant facts sufficiently plead in the complaint and all inferences fairly deductible therefrom. Pike County Hotels Corporation v. Kiefer, 262 Pa. Super. 126, 396 A. 2d 677 (1978). The test to be applied in considering a demurrer is whether it is clear and free from doubt that the pleader will be unable to establish his right

to relief. Firing v. Kephart, 466 Pa.560, 353 A. 2d 833 (1976). Applying these principles, we conclude that the complaint's allegations are sufficient to sustain a cause of action against defendants.

The General Assembly enacted the Unfair Trade Practices and Consumer Protection Law (UTPCPL), Act of December 17, 1968, P.L. 1224, §1, as amended, 1976, Nov. 24, P.L. 1168, §1 et seq.; 73 P.S. §201-1 et seq., to benefit the public by prohibiting a variety of deceptive and unfair business practices. Its aim is the prevention of fraud and must be liberally construed to effect this purpose. Commonwealth ex el Creamer v. Monumental Properties, Inc., 459 Pa. 450, 459, 329 A. 2d 812, 816-817 (1974), on remand, 26 Pa. Commw. 399, 365 A. 2d 442; Com. by Packel v. Ziomek, _____ Pa. Commw. _____, 352 A. 2d 235, 238 (1976).

In the case at bar, the attorney general is requesting an injunction of defendants' practices pursuant to Section 201-4, 73 P.S. §201-4, of the act.[1] Section 201-4 requires a finding of unlawful acts or practices as set forth in Section 201-3, 73 P.S. §201-3, of the act, which incorporates the definitions of unfair competition and unfair or deceptive acts as set forth in Section 201-2(4)(i-xvii). It is for this court to determine if any of defendants'

---

1. "Whenever the Attorney General . . . has reason to believe that any person is using or is about to use any method, act, or practice declared by section 3 of this act to be unlawful, and that proceeding would be in the public interest, he may bring an action in the name of Commonwealth against such person to restrain by temporary or permanent injunction the use of such method, act or practice." As amended 1976, November 24, P.L. 1116, §1. As affected, 1978, April 28, P.L. 202, §2(a)(1433); 73 P.S. §201-4.

practices fall within the prohibited unfair or deceptive acts or practices defined by the act.

The court may look to the Federal Trade Act, 15 U.S.C.A. §41 et seq. and the decisions of other courts under it for guidance and interpreting the UTPCPL. Com. v. Flick, 33 Pa. Commw. 553, 561, 382 A. 2d 762, 765 (1978); Pa. Retailers Assn., Reliable Inc. v. Lazin, 57 Pa. Commw. 232, 242, 426 A. 2d 712, 718 (1981).

An act or a practice is deceptive or unfair if it has the capacity or tendency to deceive. FTC v. Raladam Company, 316 U.S. 149, 152; 62 S.Ct. 966, 968 (1942). Actual injury as a result of the deception is not required, deception itself being the evil designed to be prevented. Floersheim v. FTC, 411 F. 2d 874, 878 (9th Cir. 1969), cert. denied 396 U.S. 1002 (1970). Neither the intention to deceive nor actual deception need by proved. Warner Lambert Co. v. FTC, 562 F. 2d 749, 763 (D.C. Cir. 1977); Montgomery Ward Co. v. FTC, 379 F. 2d 666, 672 (7th Cir. 1967). All that is required is a showing that the acts and practices are capable of being interpreted in a misleading way. Resort Car Rentals Sys., Inc. v. FTC, 518 F. 2d 962, 964 (9th Cir. 1975). It is the meaning and impression arising from the sum total of not only what is said but also of all that is reasonably implied that is significant. Com. v. Hush-Tone Industries, Inc., 4 Pa. Commw. 1, 22 (1971).

Moreover, an act or practice need not be deceptive in order to be declared "unfair." As stated in State v. O'Neill Investigations, Inc., 609 P. 2d 520, 535 (Alaska 1980):

"Unfairness will be determined by a variety of factors including:

(1) Whether the practice, without necessarily having been previously considered unlawful, of-

fends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous, (3) whether it causes substantial injury to consumers (or competitors or other businessmen). F.T.C. v. Sperry and Hutchinson Co., 405 U.S. 233, 244-45 n. 5, 92 S.Ct. 898, 905, n. 5.

The definition of what amounts to unfair or deceptive practices must be flexible and adaptable to respond to human inventiveness. Com. ex rel Creamer v. Monumental Properties, Inc., supra, at 818. The UTPCPL having broadly defined unlawful acts to prevent easy evasion, judicial determination as to the lawfulness of particular acts depends primarily on the factual situation presented in each case.

Moreover, other states' deceptive trade practice laws and consumer protection statutes are of relatively recent origin and therefore, the body of out-of-state case law is relatively limited. See, Annotations 89 ALR 449 and 89 ALR 3d 399.

The briefs of both plaintiff and defendant argue the sufficiency of the complaint in this case from facts which do not appear in the pleadings. They, of course, cannot be considered. DeSantis v. Swigart, 296 Pa. Super. 283, 286, 442 A. 2d 770, 772 (1982); Brennan v. Smith, 6 Pa. Commw. 342, 345, 299 A. 2d 683, 685 (1972). The complaint's sufficiency will be determined from its face.

## I

Count one of the complaint claims that certain methods of defendants used in the sale of the campground lots and memberships are unlawful as

unfair methods of competition and unfair deceptive acts or practices as set forth in section 201-2(4)(v), (vii), (xi), (xvii)[2] and Section 201-7[3] of the act.

When examined in light of these sections of the UTPCPL, Count One does set forth a cause of ac-

2. "Unfair methods of competition" and "unfair or deceptive acts or practices" mean anyone or more of the following: . . . .

(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

. . .

(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

. . .

(xi) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reduction;

. . .

(xvii) Engaging in any other fraudulent conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. §201-2(4).

3. Section 201-7(a) provides:

"(a) Where goods or services having a sale price of twenty-five dollars ($25) or more are sold or contracted to be sold to a buyer as a result of, or in connection with, a contact with or call on the buyer at his residence, that consumer may avoid the contact or sale by notifying, in writing, the seller within three full business days following the day on which the contract or sale was made and by returning or holding available for return to the seller, in its original condition, any merchandise received under the contract or sale." 73 P.S. 201-7(a).

This section further provides the form of the notice of cancellation to be attached to the contract and the method and effect thereof. Section 201-7 further provides, inter alia, when each buyer shall be informed of his right to cancel and that the seller shall not misrepresent in any manner the buyer's right to cancel.

tion, although the allegations of paragraphs 8, 9, 10, 11, 12, and 20 do not set forth violations of the act.

## (A)

Paragraphs 8, 9, 10, and 11 of the complaint allege that defendants induce potential customers to visit Plantation Park by mailing a letter or mailogram to the residence of the prospective customer, advising him that he has won a prize and that he must personally visit the park to claim it. They further allege that upon visiting the park a customer is subjected to a two to three hour sales presentation designed to wear down the resistance to purchase, including the use of sales persons meeting with the customer individually and jointly. These allegations neither singly or collectively constitute a violation of the UTPCPL.

Merely sending a letter of enticement is not a violation of the act. Commonwealth ex rel Packel v. Tolleson, 14 Pa. Commw. 72, 321 A. 2d 664, 694 (1974). Nor is the offering of free prizes per se illegal so long as they are, in fact, free and provided in accordance with the representations. There are no allegations to the contrary in the complaint. The offering of prizes for promotion is a well-recognized means of sales promotion used by many businesses, including magazine and publishing businesses and fast food chain businesses.

High pressure salesmanship in and of itself is not prohibited by the act. Commonwealth ex rel Packel v. Tolleson, ibid at 694. Involvement of more than one salesman is not illegal per se. All advertising and sales techniques are designed to overcome and wear down sales resistance. So long as it is not

fraudulent, misleading, or oppressive relay salesmanship is not illegal.

There is no allegation here of the use of the techniques of peer pressure, manufactured audience reaction, claques and shills, embarrassment, carnival-like atmosphere, reckless misrepresentation, or great expectations as seen in Commonwealth ex rel Packel v. Tolleson, supra.

Ordinarily, where acts are lawful individually, their combination does not become unlawful unless that combination results in oppression, confusion or becomes misleading. Although not here claimed, sales tactics consisting of gimmicks intentionally designed to cause confusion and misunderstanding when alleged and proven do violate the UTPCPL. Commonwealth ex rel Packel v. Tolleson, supra.

## (B)

The allegations of paragraph 12 also do not violate the act. It is there claimed a customer upon signing a contract of purchase is not given the rights of rescission required under section 201-7 of the act (73 P.S. §201-7).[4] That section of the act grants a right of rescission, but only where the sale involved has a price of $25 or more and is the "result of or in connection with a contact with or call on the buyer at his residence."

Plaintiff does not allege a sales price of $25 or greater and therefore, has not pled itself within this section of the act. But even assuming a sale price of $25 or more, plaintiff has not alleged facts to establish that the contract is in connection with a contact with or call on the buyer at his residence.

---

4. See Footnote 3.

Plaintiff does allege in paragraph 8 that the buyer is induced to visit Plantation Park by a mailing to his residence, which informs him of a prize he has won and the need to visit the park to receive it. It is at the park that a contract is entered into, if at all.

This is insufficient to trigger the rights of §201-7. This court has not found, nor has it been directed to any cases in this state, in any other state, or in the federal jurisdictions which hold that the mailing to a home of an advertisement or an inducement which ultimately leads to a contract that is significantly removed from the advertisement in time, location and in the steps taken before the contract is completed, triggers this right of rescission.

Section 201-7 of the act appears to be directed to the common situation where the door-to-door salesman contacts and consummates a contract at the home of the buyer, usually in the same visit where the buyer has little time to reflect between the contact and signing the contract.

In the instant case, the customer must travel a substantial distance both geographically and in time before he places himself in an environment whereby he is subjected to a sales presentation which may lead to a contract.

Plaintiff invites the court to broadly interpret the language of section 201-7 to include contracts preceded by a remote contact at the residence of the buyer by mail. This court declines that invitation. To adopt such an interpretation would grant the right of rescission under this act to every contract which ultimately resulted from advertising received in the home, be it by mail, newspaper, flyer or even though radio or television if plaintiff's logic were carried to its natural conclusion. Obviously, this could not have been the intent of the legislature

in enacting section 201-7. Had they so intended, it could have easily been expressly set forth.[5]

Plaintiff has cited no basis for its allegation in paragraph 20 that public policy requires a finding of this right of rescission. No statement, case law decision, rule or regulation expressing that policy has been cited or found.[6] Rescission rights being in derogation of common law principles of the sanctity of contract need a more demonstrable basis to establish its place in public policy.

## (C)

The balance of plaintiff's allegations in count one do make out a cause of action under the UTPCPL. Paragraphs 14 and 15 allege that contrary to oral and written representations to the customers that they cannot cancel their contract once executed, plaintiff has an internal "silent" cancellation policy among purchasers, which results in unequal treatment and cancellation of more than 30 percent of all contracts entered into.

This allegation, if proven, would establish unfair and deceptive practices within the meaning of the act. To misrepresent the existence of one's cancel-

---

5. The legislature by section 201-3.1 of the act delegated to the attorney general the power to adopt rules and regulations necessary for enforcement and action of the act. Significantly, the attorney general has not seen fit to adopt regulations that implement the interpretation he here asks this court to place on section 201-7.

6. It is of note that section 201-7(m) of the act refers to the rules and regulations of the Federal Trade Commission on notice of cancellation. The rules and regulations of the FTC are found in 16 C.F.R. §429.1. They are specifically applicable only to door-to-door sales defined in terms of those where the seller there "personally" solicits the sale.

lation policy is truly deceptive within the common-sense meaning of that term and violates section 201-2(4)(xvii) of the act.

Commonwealth ex rel Creamer v. Monumental Properties, Inc., supra, at page 826-827 and 829-830 held that the failure to inform a lessee of the existence of statutory remedies states a cause of action under the UTPCPL.

In the case at bar, it is alleged that there is an intentionally misleading and confusing failure to disclose the existence of a silent cancellation policy. It is alleged that this is defendant's *policy*, not that it is occasional random cancellation. It is not every exception that a seller chooses to make to a stated policy of cancellation that constitutes a violation of UTPCPL. But to conceal the existence of a silent policy of cancellation in the face of contrary representations would constitute a misrepresentation of a material fact in violation of section 201-2(4)(xvii).

Garland v. Mobile Oil Corporation, 340 F. Supp. 1095, 1099 (N.D. Ill. E.D. 1972) held that informing consumers of the existence of a late payment charge when in fact it was not an accurate description of the seller's collection practice violated the Illinois Deceptive Trade Practices Law prohibiting conduct which creates a likelihood of confusion or misunderstanding.

### (D)

Paragraphs 16 and 17 allege that buyers are required at the time of signing the contract to also sign a confession of judgment note in the amount of the deposit, which fails to give the buyer the three day right of rescission required by the Consumer Credit Protection Act (Federal Truth in Lending

Act), 15 U.S.C.A. §1601 et seq. and Regulation Z, 12 C.F.R. §226.23.

The right of rescission is given only in cases where a security interest is or will be acquired against real property which is used as a principal residence by the customer. Plaintiff's allegations meet this requirement. The confession of judgment note, once filed, would create a lien against any real estate of the buyer in the county where filed, which could, therefore, include the buyer's residence. Thus, the attorney general should not be denied the opportunity to establish a record from which the court can determine whether a lien entered pursuant to the judgment note will attach against the residence of a buyer.

Defendants allege that the attorney general does not have standing to enforce the Federal Act or Regulation Z. Defendant is correct that the Federal Act and Regulation Z specifically limit standing thereunder to civil actions brought by aggrieved debtors, 15 U.S.C.A. §1640; Weiner v. Bank of King of Prussia, 358 F. Supp. 684 (D.C. Pa. 1973), and to administrative enforcement by the Federal Trade Commission, 15 U.S.C.A. §1607(c).

Since the attorney general is neither an aggrieved debtor nor a representative of the FTC, plaintiff does lack standing to present a claim under the Federal Act or Regulation. Being federal law, it is for Congress to determine by whom and how the law shall been enforced. In sections 1607(c) and 1640, Congress has done just that.[7]

---

7. Should Congress elect to empower the state attorney generals to enforce the federal law, it could do so by amending the Truth in Lending Act as it did in 1976 with the anti-trust laws which it amended to grant state attorney generals authority to enforce. See, 15 U.S.C. §15(c).

Although the Pennsylvania Attorney General does not have standing to proceed under the Federal Act or Regulation, he is not precluded from proceeding under the UTPCPL. He has done that here by alleging that the failure to comply with the Federal Act is an unfair or deceptive act under section 201-2(4)(xvii).

The failure to recognize and provide to a consumer the federally created rights of rescission to which the consumer is entitled is unfair and deceptive. As previously stated, the UTPCPL is to be liberally construed and two of the tests of deceptiveness and unfairness are whether the practice offends public policy as established by statute and whether it may be viewed as unscrupulous. To fail to permit the consumer the knowledge or exercise of his federally created rights is unscrupulous and contrary to statute.

The fact that an activity violates other statutes does not prevent it from also being a violation of the UTPCPL. Safeguard Investment Company v. Commonwealth of Pennsylvania, 44 Pa. Commw. 417, 404 A. 2d 720 (1979) held that activities which violated the Pennsylvania Usery Law can also be unfair or deceptive acts under the UTPCPL.

Deetz v. Nationwide Insurance Company, 20 D. & C. 3d 499 at 507 (1981) held a violation of the Unfair Insurance Practices Act also constituted an unfair act under the UTPCPL. Similarly, a violation of the Fictitious Name Act was held an unfair trade practice in Com. v. Armstrong, 74 D. & C. 2d 579 (1974).

Lookebill v. Mom's Mobile Home, Inc., 16 Wash. App. 817, 559 P. 2d 600, 604-05 (1977) held that violations of the Washington Retail Installment

Sales Act were also violations of the Washington Consumer Protection Act.[8] (RCW 19.86).

Commonwealth ex rel Creamer v. Monumental Properties, Inc., supra held that section 201-2(4)(xvii) was designed to cover generally all unfair and deceptive acts or practices in the conduct of trade or commerce. The violation of federally created consumer protection rights cannot be said to be excluded therefrom. Iron and Glass Bank v. Franz, 9 D. & C. 3d 419, at 428-429 (1978) held that an action which violated the FTC's "preservation of defenses" trade regulation was also a violation of the UTPCPL. The court pointed out that where the FTC defines conduct creating a likelihood of confusion or mistake as an unfair trade practice, the UTPCPL incorporates that standard into its act.

This court finds nothing in the Truth in Lending Act which would support a conclusion that Congress has preempted this field or that it intended to prevent state legislatures or state attorney generals from interpreting their own unfair trade practice acts in light of the standards and rights created by that federal legislation. Courts start with the assumption that the historic powers of the states are not preempted by a federal act unless there is manifested a clear purpose and intent of Congress to do so. See, Conference of Federal Savings and Loan

---

8. Some state statutes exempt from their consumer protection acts activities otherwise prohibited or regulated by state or federal law. See, e.g. Allen v. Am. Land Research, 25 Wash. App. 914, 611 P. 2d 420, 422 (1980); State ex rel McLeod v. Rhoades, 275 S.C. 104, 267 S.E. 2d 539 (1980); State v. O'Neill Investigations, Inc., 609 P. 2d 520 (Alaska 1980). Pennsylvania's statute significantly does not exempt from its ambit activities otherwise prohibited or regulated by other state or federal law.

Association v. Stein, 604 F. 2d 1256, 1260, aff'd 100 S.Ct. 1304. No such purpose or intent is here found.[9]

### (E)

Paragrpah 18 alleges that the sales presentation and contracts given the prospective buyers create a likelihood of confusing and misunderstanding as to what, in fact, is being purchased because of their use of the terms "mortgage" and "lease." Paragraph 19 alleges that what is being sold is nothing more than a membership which grants the right to use the facilities of defendant upon proper advance reservations and compliance with other rules of the campground facility.

These allegations state unfair and deceptive acts within the definition of sections 201-2(4)(v) and (xvii) by representations that create a likelihood of confusion and misunderstanding of what benefits are purchased.

Defendants respond that what they are offering for sale is an undivided leasehold interest in the park, and that the use of a mortgage with respect to a leasehold interest is specifically provided for in the Landlord and Tenant Act, 68 P.S. §205.204.

Even if an undivided leasehold interest is what defendants are selling, plaintiff has alleged a cause of action of a likelihood of confusion or misunderstanding concerning these terms. The use of the

_____

9. It is to be noted that in as pervasive a field of federal activity as anti-trust or labor law it has not been held that federal preemption of these fields is total. See, Sears, Roebuck & Co. v. Stiffel Company, 376 U.S. 225, 84 S.Ct. 784 (1964), rehearing den., 376 U.S. 973, 84 S.Ct. 1131; Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307 (1943); and White Motor Company v. Mallone, 545 F. 2d 599 (8th Cir. 1976), aff'd 100 S.Ct. 233.

term "mortgage" and "lease" can convey the impression that what is purchased or leased is a specific piece of real estate as opposed to an undivided leasehold interest in the entire park, without the exclusive right to any one part of it.

The test of whether a statement is deceptive is based on the net impression it is likely to make upon a person of averge intelligence and not whether it may be literally or technically construed to not constitute a misrepresentation. Com. v. Foster, 57 D. & C. 2d 203 (1972). Statements, therefore, literally can be true and still be deceptive and enjoinable.

While the use of the terms "lease" and "mortgage" may here be technically correct and legal, it is the net impression created by those terms that controls. As said in P. Lorillard Company v. FTC, 186 F. 2d 52, at 58 (4th Cir. 1950), quoting Florence Manufacturing Co. v. J.C. Dowd & Co., 2 Cir., 178 F. 73, 75:

" . . . The law (relating to trade marks) is not made for the protection of experts, but for the public—that vast multitude which includes the ignorant, the unthinking and the credulous, who, in making purchases, do not stop to analyze, but are governed by appearances and general impressions."

Thus, if what is presented has a tendency to mislead the casual reader or listener, it may be subject to restraint. See generally, Annotation at 65 ALR 2d 225 at 303.

### (F)

Plaintiffs allege a cause of action under the UTPCPL in paragraphs 21 and 22 of the complaint. It is there alleged that the consumer's bargaining

position is impaired by failure of defendants to clearly and conspicuously disclose the number of lots ready for use and the number of memberships to be sold as a ratio per each developed lot. If proven, this would establish violations of sections 201-2(4)(v) and (xvii).

If the memberships sold merely grant the consumer the right to use the facilities of the park with proper advance reservations, then the ratio of memberships to lots and the number of available lots is material and necessary to inform the consumer of the projected level of competition for those lots. Otherwise, the benefits of membership may be misunderstood and confused. The Commonwealth cannot be denied the opportunity to establish a record showing defendants' representations of the benefits of memberships are in violation of section 201-2(4)(v) or that they are omitting material facts which create the likelihood of confusion or misunderstanding prohibited by section 201-2(4)(xvii).

### (G)

Paragraph 23 alleges that contrary to the Pennsylvania Goods and Services Installment Sales Act (PGSISA), 69 P.S. §1501(b), defendants are charging an annual percentage rate of interest in excess of 15 percent and and that this constitutes an unfair trade practice under the UTPCPL. Defendants claim that plaintiffs have not alleged that they are selling "goods" or "services" within the meaning of the PGSISA. Defendants also challenge that a violation of this act could constitute a violation of the UTPCPL.

Plaintiff's second contention is without merit. As discussed in I (D) of this opinion, supra, at pp. 127-128 the fact that an activity violates other statutes does not prevent it from also being a viola-

tion of the UTPCPL as an unfair, deceptive act. See, Safeguard Investment Company v. Commonwealth of Pennsylvania, supra, holding that a violation of the Pennsylvania Usery Law is an unfair and deceptive act under the UTPCPL.

Marshall v. Miller, 47 N.C. App. 530, 268 S.E. 2d 97 (1980) held that the rental of spaces in a mobile home park and the sale of facilities, services and amenities incident thereto is subject to the North Carolina Consumer Protection Law Statute.

As to defendants' argument that it is not selling goods and services within the meaning of the PGSISA, plaintiff's complaint alleges in paragraphs 7 and 19 that defendants are engaged in the sale of recreational campground lots and memberships which give the consumer the right to use the facilities of the park in accordance with its reservations, rules and policies.

69 P.S. § 1201(1) of the PGSISA defines "goods" as "tangible chattels bought for use primarily for personal, family, or a household purposes. . . . " 69 P.S. § 1201(2) defines "services" as "work, labor, and services for other than a commercial or business use. . . . " The limitations on interest charged are imposed by section 1501(b) of the act on retail installment contracts which are defined by section 1201 in terms of the sale of goods or the furnishing of services.

While campground lots do not fall within the definition of "goods," the memberships sold do fall within the definition of "services." The PGSISA is remedial legislation and is to be broadly construed to affect the goals of the act. Iron and Glass Bank v. Franz, supra, at page 423. It is of note that the court in dealing with installment contracts selling memberships in a health spa, treated the spa's contracts

as being within the PGSISA definition of "goods" and "services."

American Buyers Club v. Shaffer, 46 Ill. App. 3d 266, 5 Ill. Dec. 676, 361 N.E. 2d 1380 (1970) held that the sale of memberships in a buyers club is a contract for services.

The Attorney General of Texas in opinion no. MW-407 held that the "right-to-use" time-sharing plans in resort communities are a "service" within the meaning of the Texas Consumer Credit Code. That code is similar to the PGSISA which defines "services" as "work, labor, or services of any kind when purchased primarily for personal, family or household use and not for commercial business use. . . . " V.T.C.S. Arts. 5069-6.01(b).

Here, defendants' memberships which grant a consumer the right to use their facilities undoubtedly carry with them a bundle of services, rights and obligations similar to those incident to the residential leases of real estate held to be within the UTPCPL in Commonwealth ex rel Creamer v. Monumental Properties, Inc., supra at pages 820-821.

The marketing and distribution of this bundle of rights and services, if established to exist by the Commonwealth, falls within the PGSISA limitations on interest and must meet the standards of the UTPCPL. Given the modern-day economic realities, the purchaser thereof has the right to at least as much protection as the purchaser of more formalistic goods and services.

## II

Plaintiff's count two incorporates paragraphs 1, 3, 4, 5, 6, 7 and 23 and again alleges that defend-

ants' violation of the limitations on interest in violation of the PGSISA; and that such is also violative of the UTPCPL. Defendants' demurrer cannot be sustained to count two for the reasons set forth in Part I (G) of this opinion, pp. 133-134 supra, disposing of the demurrer to this issue in count one. Although count two is a duplication of the allegations in count one and would, therefore, be subject to being stricken for that reason, defendants have not moved to strike count two and therefore, it will remain in the complaint, albeit a duplication.

### III

Count three of plaintiff's complaint incorporates paragraphs 1, 3, 4, 5, 6, 7, 16, and 17 and alleges that these acts violate the Federal Truth in Lending Act and Regulation Z for failing to afford the three-day right of cancellation. Defendants' demurrer to this count must be sustained because the attorney general is here attempting to proceed solely under the Federal Act and Regulation. As discussed in I (D) of the opinion at page 127 supra, the attorney general does not have standing to proceed thereunder and therefore, lacks the capacity to sue.

The granting of this demurrer does not, however, preclude the attorney general from proceeding under the UTPCPL on the basis that the violation of the Federal Act and Regulation is an unfair or deceptive practice as discussed in I (D) of this opinion at pp. 127-128 supra.

### IV

Count four of plaintiff's complaint incorporates paragraphs 1 through 28 by reference and alleges that the practices and acts set forth therein are unfair and deceptive acts under the UTPCPL in

that they constitute unconscionable sales practices within Section 201-2(4)(xvii).

Defendant has demurred to this count and moves to strike it as merely restating the allegations contained in count one. While it is true that this is a restatement of the allegations set forth in count one, it proceeds on a different theory, viz. the facts set forth in these allegations are unfair or deceptive acts because they are unconscionable sales practices. Thus, defendants' motion to strike count four as a duplication must be refused.

Unconscionability is a basis for injunctive relief under the UTPCPL. Korn v. Avis Rent-A-Car System, (No. 1), 8 D. & C. 3d 640 (1977). It has been defined as the absence of a meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party. See, Williams v. Walker-Thomas Furniture Company, 350 F. 2d 445, 449 (1965).

Since the court must view the reasonableness and fairness of the contractual setting to determine if there are unconscionable elements present, the Commonwealth cannot be denied the opportunity to present a record from which the court can factually determine whether unconscionability exists.

However, in I (A) and I (B), pp. 123-124 of this opinion, this court has already determined that paragraphs 8, 9, 10, 11, 12, and 20 do not allege acts or practices violative of the UTPCPL. For the same reasons, defendants' demurrer is granted to these paragraphs, alleging unconscionability.

## (V)

Defendants have also demurred on the basis of plaintiff's failure to attach to the complaint as exhibits the letters and mailograms referred to in

paragraph 8, the judgment note referred to in paragraph 16, the mortgages and leases referred to in paragraph 18, and the contracts referred to in paragraph 21. This demurrer is refused.

Demurrer is not the proper basis to challenge a failure to attach documents as required by Pa.R.C.P. 1019(h). The appropriate procedure is a motion to strike for lack of conformity to law. Albert Einstein Medical Center v. Nathans, 5 D. & C. 3d 619 (1978); Mauer v. Coal, 65 D. & C. 2d 112 (1974); and 5 Standard Pa. Practice 2d, Section 25:45 (1981).

Had such a preliminary objection been filed, however, it would have been refused. Defendants have at least equal access with plaintiff to defendants' own letters, mailograms, judgment note, contracts, mortgage and leases. The purpose of a plaintiff's complaint is to inform defendant of the basis upon which relief is sought so that defendant may properly respond. Where as here, the documents are within the knowledge of the defense, defendants are not entitled to the prescision in pleadings which he would otherwise be entitled to if he did not know them. Local No. 163, International Union v. Watkins, 417 Pa. 120, 207 A. 2d 776 (1965). Also, liberal discovery is, of course, available to defendants. Pa.R.C.P. 4001-4025; Huntingdon v. Bloomsburg Area Industrial Development Assn., Inc., 53 D. & C. 2d 138 (Columbia 1971).

(VI)

Defendants also demur to the allegations naming Frank R. Nickel, Sr. as a party. The only allegations concerning Frank R. Nickel, Sr. by name occur in paragraph 4 wherein it is alleged that he is majority

stockholder of defendant American Holidays, Inc. and that he is president thereof.

However, the methods and acts alleged throughout count one of the complaint as unfair and deceptive are attributed to defendants in plural form, which would be allegations that Frank R. Nickel, Sr., as one of defendants, did, in fact, engage in such acts. This is sufficient to defeat the demurrer as to Frank R. Nickel, Sr., it being held above that at least some of these allegations set forth a cause of action under the UTPCPL.

## (VII)

Defendants' demurrer that plaintiff's complaint fails to state in what respects, if any, competitors of defendant have been placed at a disadvantageous position by reason of their alleged actions. This assumes that the placing of competitors in a disadvantageous position is a necessary prerequisite to an action under the UTPCPL. This is not the law.

Section 201-3 defines as unlawful acts not merely unfair methods of competition, but also unfair or deceptive acts or practices as defined in Section 201-2(4)(i-xvii). Moreover, unfair competitive practices are not limited to those likely to have an anti-competitive consequence as with anti-trust laws; nor are unfair practices in commerce defined in terms of purely competitive behavior. FTC v. Sperry and Hutchinson Company, 404 U.S. 233, 92 S.Ct. 898 at 905 (1972). Therefore, this demurrer is denied.

## ORDER

And now, January 24, 1983, defendants' demurrer to paragraphs 8, 9, 10, 11, 12, and 20 of count one of the complaint is sustained. The demurer to

the balance of the allegations of count one are refused. The granting of this demurrer does not preclude plaintiff from proving the existence of the facts alleged in those paragraphs as bearing on the violations which have been held to be sufficiently pled. Defendants' demurrer to count two of the complaint is refused. Defendants' demurrer to count three of the complaint is sustained. Defendants' demurrer to count four of the complaint is sustained to the extent that count four incorporates the allegations of paragraphs 8, 9, 10, 11, 12, and 20. The demurrer to the balance of the allegations incorporated in count four is refused. The granting of this demurrer does not preclude plaintiff from proving the existence of the facts alleged in these paragraphs as bearing on the violations held to be sufficiently pled. Defendants' motion to strike count four is refused.

Defendants shall have 20 days from the service of this order to file an answer to the complaint.