## Graham v. I.M.O. Industries Inc.

*Donald J. Balsley Jr., Neal R. Cramer* and *John P. Tierney III*, for plaintiffs.
*Alan T. Silko,* for defendant General Electric Co.
*Roger L. Wise,* for defendant I.M.O. Industries Inc.

WETTICK, *J.,* October 15, 1992—These lawsuits arise out of an accident that occurred in April 1989 at a plant operated by LTV Steel Corp. Plaintiffs' complaints allege that plaintiffs were injured when a centrifugal blower exhauster, known as the no. 5 exhauster, malfunctioned, caught fire and exploded. Defendant I.M.O. Industries Inc., is the successor-in-interest to Delaval Steam Turbine Co., which designed, built and sold the no. 5 exhauster apparently during the period from 1952 to 1954. Defendant General Electric Co. allegedly inspected, cleaned, repaired and tested component parts of this exhauster at its place of business in 1985.

Plaintiffs scheduled the depositions of corporate representatives of both defendants pursuant to Rule 4007.1(e) of the Pennsylvania Rules of Civil Procedure. At both depositions, plaintiffs' counsel asked the designated corporate representatives to express opinions concerning the cause of the 1989 accident. At both depositions, counsel for the party that had produced the witness objected. Plaintiffs' motion to compel these witnesses to provide this opinion testimony is the subject of this opinion and order of court.

IMO designated Richard Salzmann, the manager of product engineering for the Delaval Steam Turbine Di-

vision of IMO. IMO relies on the following facts to support its objections.

Mr. Salzmann was not employed by IMO when the exhauster was designed, manufactured, sold or installed. The exhauster has not been in IMO's possession or control since its installation in the early 1950s. Mr. Salzmann was never involved in the maintenance of this exhauster during its 35 years of operation prior to the accident. He will not be called by IMO as an expert witness at trial. He has never seen the exhauster either before or after the accident. He was not asked to and never investigated the cause of the accident. He never discussed the cause of the accident with anyone in his engineering department. To the best of his knowledge, IMO has not determined the cause of the accident. He has never been asked to assist IMO in determining the cause of the accident. He has never expressed an opinion as to the cause of the accident. He has never prepared any report, oral or written, concerning the cause of the accident. To the best of his knowledge, there has never been any investigation by IMO concerning the failure of the no. 5 exhauster.

Mr. Salzmann's sole source of information concerning the nature of the accident and the history of the no. 5 exhauster comes from documents that IMO's counsel had obtained from IMO and LTV.[1] Mr. Salzmann also met with IMO's counsel and a specially retained consultant after he was selected by IMO to testify as its corporate

1. It appears that these documents are available to plaintiffs if they are not already in plaintiffs' possession. Also, apparently this witness did not resist any efforts of plaintiffs to learn the nature and contents of the documents.

representative. At this meeting, Mr. Salzmann would have learned of the opinions of this expert witness, if any were expressed. At this meeting, Mr. Salzmann was not asked to give any opinion as to the cause of the accident.

At his deposition, Mr. Salzmann testified that he is capable of giving an opinion as to the cause of the explosion. His opinion would be based entirely on the information in the previously described documents that he reviewed. He was not asked about his ability to express any opinions concerning the accident based primarily on his experiences with IMO/Delaval products.

General Electric designated Robert L. Coen, a mechanical projects manager at its West Mifflin Branch. Mr. Coen had no recollection as to whether General Electric had repaired a Delaval rotor at its West Mifflin facility. However, from a review of the job orders, he could determine that General Electric repaired two rotor assemblies in July 1985 and that the rotors could have possibly been from the no. 5 exhauster. He described the work that was done for each job order. He described the testing that was conducted and the test results. He answered questions concerning limitations on the testing that was performed and expressed opinions as to whether it would have been prudent to test the rotor in a different fashion. His testimony was based on the information in the job orders and his general knowledge of the services that General Electric performs.

Upon instructions of counsel, he was unwilling to express opinions concerning the design of the rotor (General Electric had nothing to do with its design) or possible causes of the rotor's malfunction that were unrelated to

any services that General Electric provided or advice that it gave LTV.

Plaintiffs' discovery requests are governed by my opinions in *Williams v. South Hills Health System,* 24 D.&C.3d 206 (1981), and *Feyes v. Gehl,* 134 Pitts. L.J. 55 (1985).[2] In the *Williams* case, plaintiffs deposed a physician who was in charge of emergency services at the defendant hospital at the time of the deposition but who was not a hospital employee at the time of the alleged malpractice. This witness was asked to express medical opinions relevant to the malpractice claim on the basis of his experience in emergency care procedures. Defendant's counsel instructed him not to testify as to these matters on the ground that any opinions that he expressed were not based on any facts within his personal knowledge but rather on information gained through his medical study and general experience. In the *Feyes* case, plaintiffs deposed a treating physician who was a defendant in a medical malpractice claim. The defendant physician refused to answer questions involving medical opinions that had no relationship to his treatment of the plaintiff-patient.

The *Williams* and *Feyes* opinions recognize that our discovery rules permit discovery seeking information involving an opinion or a contention that relates to a fact or the application of law to fact. Pa.R.C.P. 4003.1(c). Both opinions also recognize that Rule 4003.5's protec-

2. While all parties also cite *Equitable Gas Co. v. Walbrook Insurance Co. Ltd.,* 133 Pitts. L.J. 216 (1984), and *Tate v. Philadelphia Savings Fund Society,* 1 D.&C.4th 131 (1987), these opinions involve only the scope of the protections which Pa.R.C.P. 4003.3 affords trial preparation material. In the present case, defendants are not basing their objections to plaintiffs' discovery requests on Rule 4003.3.

tions from discovery of opinions held by an expert apply only to specially retained experts. However, in both opinions I upheld the objections to discovery seeking the expert opinions of witnesses not protected by Rule 4003.5 where the expert's opinion was not based in any way on his involvement with the subject matter of the litigation. The foundation for my ruling in *Williams v. South Hills Health System* was a qualified common law privilege that protects experts who have no personal information concerning the subject matter of the litigation. The foundation for my ruling in *Feyes v. Gehl* was Rule 4011's prohibition against discovery that will cause unreasonable annoyance, burden and expense.

In the present case, Mr. Salzmann and Mr. Coen do not have any personal information that would assist them in forming an opinion as to the causes of the explosion. Their opinions would be based solely on information in documents prepared by others. Any experts whom plaintiffs retain will be in the same position as these witnesses to offer factual and opinion testimony concerning the causes of the explosion. Consequently, if Mr. Salzmann and Mr. Coen were not employees of the defendant corporations, plaintiffs would clearly not be allowed to depose these witnesses or any other experts who have no relevant factual information for purposes of having them express opinions as to the causes of the accident based on facts obtained from a review of documents which they did not prepare and their expertise gained through training and experience. Such discovery would be barred under the qualified common law privilege upon which I relied in *Williams v. South Hills Health System* and Rule 4011's prohibitions against unreasonably burdensome discovery utilized in *Feyes v. Gehl.*

I do not reach a different result because Mr. Salzmann and Mr. Coen are employees of the defendant corporations. Enterprises engaged in the production of sophisticated products or the delivery of sophisticated services may employ hundreds or even thousands of specially trained persons who would be capable of expressing expert opinions on matters that are the subject of litigation involving their employers even though they did not participate in the subject matter of the lawsuit.[3] There is no reason why other parties should be entitled to utilize the expertise of these persons whose corporate responsibilities are unrelated to the subject matter of the discovery. The rationale supporting my opinions in *Williams v. South Hills Health System* and *Feyes v. Gehl* bars such discovery. In fact, *Williams v. South Hills Health System* involved an identical fact situation—the plaintiff sought to compel a physician employed by the defendant hospital with no knowledge of the incident to render opinions based on hospital records and descriptions of the activities which allegedly occurred during plaintiff's treatment.

I recognize that in the present case, unlike *Williams v. South Hills Health System*, Mr. Salzmann and Mr.

---

3. There are many reasons why a party would like to depose these employees of another party. Their opinions may assist the party in understanding and preparing its case. If these opinions are expressed in a deposition recorded by videotape, they may be admissible under Pa.R.C.P. 4017.1(g). If these persons can be required to give expert testimony in a deposition, there is no reason why they cannot be subpoenaed to provide similar testimony in court. Also, while the opinions of these subordinate employees are not binding on the employer, the jury may give more weight to opinions that are adverse to the witnesses' employer because of the witnesses' status as employees of that party.

Coen are not witnesses whom plaintiffs elected to depose. Pursuant to Pa.R.C.P. 4007.1(e), plaintiffs sent a notice directing the corporate defendants to designate persons to testify on behalf of the corporation. For example, plaintiffs' deposition notice directed General Electric to produce a witness to provide testimony concerning the work performed on the exhauster prior to July 1985, including the testing of the steam rotor.[4] Although these witnesses are not officers, directors, or managing agents of the defendant corporations, testimony of a designated subordinate employee may be binding on the corporations.

The testimony which is sought is not whether the corporation has adopted a position as to the cause of the accident or whether the corporation has conducted any investigations as to the cause of the accident and, if so, the nature and results of the investigations. In this case, no corporate representatives, acting in their corporate capacities, have expressed any opinions as to the cause of the accident and the corporation has not directed any of its employees to conduct an investigation into the cause of the accident. Furthermore, the corporation does not appear to be in a better position to determine the cause of the accident than any expert whom plaintiffs would retain. Thus, the issue presented by plaintiffs' motion is whether a public or private corporation, partnership, association or governmental agency can be compelled to designate an employee to give opinion testimony as to the cause of plaintiffs' injuries simply because certain employees of the corporation have the expertise to form

---

4. For purposes of this opinion, I assume that questions seeking the cause of the explosion come within the scope of the deposition notices provided pursuant to Rule 4007.1(e).

opinions based solely on information that is equally available to any other expert.

Our rules of discovery do not require the parties to provide expert opinions concerning the ultimate issues of fact in the case at any particular stage of discovery. Plaintiffs in this case, for example, have the same information that is available to Mr. Salzmann or Mr. Coen. Yet plaintiffs cannot be required to provide an expert opinion at this time. There is no justification based on the Pennsylvania Discovery Rules for reaching a different result simply because other parties to the litigation happen to employ persons who are capable of rendering expert opinions on the basis of information about which they have no personal knowledge.

This very issue was the subject of my opinion in *Feyes v. Gehl.* In this case the plaintiff sought to compel the defendant medical doctor to render expert medical opinions concerning questions unrelated to his treatment of the patient. My opinion rejected plaintiff's argument that Rule 4003.5 implicitly entitled a party to obtain discovery of any expert opinions of experts who are not protected by Rule 4003.5. I concluded that Rule 4003.5 does not protect expert opinions of the parties or their employees because these opinions are likely to be based on the witness's firsthand knowledge of relevant facts and because in that situation the facts and the opinions are interrelated. But when the party or representative of a party capable of rendering an expert opinion is requested to render an opinion on a matter that has no relationship to the witness's involvement in the matter, the policy protecting experts from becoming involuntary expert witnesses is equally applicable.

"The apparent reason for restricting this Rule's [4003.5] protections only to facts and opinions acquired or developed in anticipation of litigation or for trial was to make available through discovery the conclusions and opinions of an expert derived from his or her participation in the matter that is the subject of the lawsuit. Experience under the prior discovery rules (which protected all opinions from discovery) demonstrated that it is impractical to differentiate between factual testimony and opinion testimony when the witness is an expert who participated in the incident. Compare, e.g., *Nehls v. Uniontown Hospital*, 2 D.&C.3d 108 (1977); *Bastian v. Balka*, 25 Bucks L.R. 9 (1973); and *Jankowski v. Karakashian*, 2 D.&C.3d 220 (1976).

"Also, opinions of an expert witness developed through the witness's participation in the event cannot be equated with opinions of an expert witness based on an attempted recreation of the event. For example, a physician who participates in treating a patient occupies a very different position from a specially retained expert who bases his or her conclusions and opinions on hospital records and the testimony of those who have firsthand knowledge of the patient's condition and the treatment provided. Any conclusions and opinions of a physician who provided treatment will necessarily be interwoven with and influenced by the factual observations made in the course of treatment. See *Ferguson v. Redstone Acoustical & Flooring Inc.,* 21 D.&C.3d 475, (1981). Since the foundation of any expert opinion is its factual basis, a treating physician's firsthand knowledge of the patient's condition

and the treatment provided places this witness in a far better position to render opinions concerning the patient's condition and the nature of treatment and care provided.

"For these reasons, the discovery rules require an expert witness with firsthand knowledge of the relevant facts to provide detailed factual and opinion testimony that is not required of a specially retained expert. However, there is no reason to require opinion testimony not required of a specially retained expert in areas in which this witness is not drawing in any manner upon information available to the witness as a participant." *Feyes v. Gehl,* 134 Pitts. L.J. at 56-57.

In summary, I find the following facts to be significant in reaching my result. Mr. Salzmann and Mr. Coen will not be called by the defendant corporations to render any expert opinions. No person within the defendant corporations has firsthand knowledge of the causes of the explosion. The defendant corporations did not direct any employees to conduct any investigations into its causes, and no employees have done so. Mr. Salzmann and Mr. Coen have not conducted any such investigations or expressed any opinions to their employers on this issue. The questions for which the opinions of each witness were sought did not specifically relate to the nature of the products/services of the defendant corporations—these witnesses did not refuse to express opinions concerning defects in or difficulties with the products/services of their employers, opinions concerning their understanding of the quality of their employers' products/services, opinions concerning ways in which their employers' products/services may have contributed to the explosion, or any other

opinions or conclusions that would be based on their experiences with their employers' products/services.[5] They were simply asked to provide opinion testimony as to the causes of an explosion that involved a product which they manufactured or serviced several years prior to the explosion. These witnesses have no information gained from personal knowledge concerning the causes of the incident. Consequently, they should not be compelled to provide expert testimony under the policy that protects persons from giving expert testimony in private litigation when they had no involvement in the matter.

## ORDER OF COURT

On October 15, 1992, it is hereby ordered that plaintiffs' motion to compel discovery is denied.

---

5. See, e.g., *Dallas v. Marion Power Shovel Co. Inc.*, 126 F.R.D. 539 (S.D. Ill. 1989), which allowed a plaintiff to discover the professional opinions of the vice-president of marketing and engineering that were based on his knowledge of the defendant's product. The critical distinction between *Dallas v. Marion Power Shovel Co.* and the present case is that in the federal case the discovery sought opinions based on facts the witness gained in the course of his employment.