**COMMONWEALTH of Pennsylvania, Acting by Attorney General Thomas W. CORBETT, Jr., Plaintiff**

v.

**PEOPLES BENEFIT SERVICES, INC., Defendant.**

Commonwealth Court of Pennsylvania.

Argued April 10, 2007.

Decided May 14, 2007.

David Sumner, Sr. Deputy Attorney General and Linda J. Williams, Chief Dep-

uty Attorney General, Harrisburg, for plaintiff.

Don M. Tellock, New York, NY, for defendant.

BEFORE: SMITH–RIBNER, Judge, FRIEDMAN, Judge, SIMPSON, Judge.

OPINION BY Judge FRIEDMAN.

Before this court are the cross motions for summary judgment filed by Peoples Benefit Services, Inc., (PBS) and the Commonwealth of Pennsylvania, Acting by Attorney General Thomas W. Corbett, Jr., (Commonwealth). The motions arise from an action filed against PBS by the Commonwealth, pursuant to section 4 of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL),[1] alleging unfair and deceptive trade practices targeting Pennsylvania senior citizens and violations of other statutory provisions governing marketing, telemarketing and direct mail. We deny the motions.

PBS has sold discount prescription drug, medical and dental cards and/or memberships and related services to senior citizens since 1994, marketing its products and services through direct mail, telephone solicitations and television advertisements. After the federal government established its own Medicare-endorsed prescription drug discount cards and prescription drug coverage programs, PBS began marketing a new prescription drug discount card and began mailing new solicitations and otherwise advertising its goods and services.

On November 2, 2005, following its investigation of PBS's business practices, the Commonwealth filed an eight-count Complaint in Equity (Complaint) against PBS for alleged violations of the UTPCPL, Tel-

---

1. Act of December 17, 1968, P.L. 1224, *as amended*, 73 P.S. § 201–4. Section 4 of the UTPCPL authorizes the Attorney General to bring an action in the name of the Common-
wealth to restrain by temporary or permanent injunction the use of any method, act or practice declared unlawful under section 3 of the UTPCPL, 73 P.S. § 201–3.

emarketer Registration Act (Telemarketing Act),[2] Fictitious Names Act[3] and related federal laws and regulations. On the same date, the Commonwealth filed a petition for preliminary injunction and special relief, seeking to enjoin PBS's advertisements and solicitations.

In its Complaint, the Commonwealth alleges generally that PBS has engaged in unfair methods of competition and unfair or deceptive acts or practices by marketing in ways that could confuse or mislead consumers into believing that PBS and/or its goods and services are government related, in violation of sections 2 and 3 of the UTPCPL.[4] On November 22, 2005, PBS filed preliminary objections to the Commonwealth's Complaint, requesting that each count of the Complaint be dismissed with prejudice.[5]

In January 2006, this court conducted a three-day hearing on the Commonwealth's preliminary injunction request, at which both parties presented evidence. In addition, prior to the preliminary injunction hearing, PBS took the deposition of the

**2.** Act of December 4, 1996, P.L. 911, *as amended*, 73 P.S. §§ 2241–2249.

**3.** 54 Pa.C.S. §§ 301–332.

**4.** Section 3 of the UTPCPL provides, in relevant part, that:

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of clause 4 of section 2 of this act . . . are hereby declared unlawful.

73 P.S. § 201–3.

Section 2(4) of the UTPCPL provides, in relevant part, that:

As used in this act.

(4) **"Unfair methods of competition"** and **"unfair or deceptive acts or practices"** mean any one or more of the following:

(i) Passing off goods and services as those of another;

(ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

(iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;

. . . .

(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

. . . .

(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

. . . .

(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding. 73 P.S. § 201–2(4). The Complaint seeks, *inter alia:* (1) a declaration that PBS's conduct is in violation of the UTPCPL; (2) an order permanently enjoining PBS from engaging in such conduct, 73 P.S. § 201–4; (3) an order requiring PBS to make full restitution to the affected consumers, section 4.1 of the UTPCPL, added by the Act of November 24, 1976, P.L. 1166, 73 P.S. § 201–4.1, and to pay civil penalties to the Commonwealth, section 8 of the UTPCPL, 73 P.S. § 201–8; (4) an order requiring PBS to forfeit its right to engage in any business in the Commonwealth until the restitution and civil penalties are paid; and (5) an order requiring PBS to provide notice to the Commonwealth prior to engaging in any business in the Commonwealth. (Complaint, ¶¶ 129, 134, 139, 149, 161, 169, 182, and 195.)

**5.** Specifically, PBS alleged that: (1) the Complaint fails to sufficiently identify the injured parties; (2) Counts I, IV and V of the Complaint lack the specificity required by Pa. R.C.P. No. 1019(a); (3) Counts I, II, III, VI, VII, and VIII of the Complaint fail to state claims for which relief can be granted; and (4) this court lacks subject matter jurisdiction over the causes of action in Counts VII and VIII of the Complaint.

Commonwealth's Rule 4007.1(e) designee, Kimberly J, Wuchina.[6] Following the hearing, by order dated January 26, 2006, Senior Judge Keith B. Quigley denied the Commonwealth's petition for preliminary injunction without prejudice.

Subsequently, in *Commonwealth ex rel. Corbett v. Peoples Benefit Services, Inc.,* 895 A.2d 683 (Pa.Cmwlth.2006), this court dismissed the preliminary objections filed by PBS and directed PBS to file an answer to the Commonwealth's Complaint. On April 27, 2006, PBS filed an answer and new matter, and the Commonwealth filed its response to the new matter on May 15, 2006. Thereafter, both PBS and the Commonwealth filed motions to compel discovery. These motions each were denied, the parties were ordered to submit pre-trial statements and a trial date was set for March 2007.

On December 5, 2006, the Commonwealth filed an amended motion for partial summary judgment (Commonwealth's Motion).[7] On December 15, 2006, PBS cross-filed for summary judgment (PBS's Motion), responding to the Commonwealth's Motion and setting forth grounds for entry of summary judgment in its favor. Following the submission of briefs, the motions were argued before this court, and the matter is now ripe for disposition.[8]

## I. Pa. R.C.P. No. 1035.3

■ As a preliminary procedural matter, the Commonwealth contends that this court should enter summary judgment against PBS pursuant to Pa. R.C.P. No. 1035.3.[9] The Commonwealth asserts that PBS failed to file a timely response to the Commonwealth's motion for summary judgment and that this court may, and should, enter judgment against PBS on that basis, particularly given that PBS has over a dozen lawyers, already has been instructed as to the importance of deadlines, has sought no extension and has offered no explanation for its failure to respond to the averments in the Commonwealth's Motion.

PBS counters that Pa. R.C.P. No. 1035.3 specifies no required form of response so long as the adverse party identifies (1) facts in dispute or (2) facts essential to the cause of action that were not produced. PBS asserts that it did so in its own motion for summary judgment, filed just ten days after the Commonwealth's Motion, which constituted a sufficient response under Pa. R.C.P. No. 1035.3.

6. Pa. R.C.P. No. 4007.1(e) states that a party issuing a deposition notice and/or subpoena may name an organization or a government agency as the deponent and describe with reasonable particularity the matters to be inquired into. In that event, the named organization or agency shall designate one or more persons to testify on its behalf, and may set forth, for each person designated, the matters on which he or she will testify. The person or persons so designated "shall testify as to matters known or reasonably available to the organization." Pa. R.C.P. No. 4007.1(e).

7. The trial was continued generally following the filing of the Commonwealth's Motion.

8. Summary judgment is properly granted where pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits and expert reports, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Pa. R.C.P. Nos. 1035.1 and 1035.2; *Ducjai v. Dennis,* 540 Pa. 103, 656 A.2d 102 (1995). Summary judgment may be entered only in those cases in which the right to relief is clear and free from doubt. *Id.*

9. Pa. R.C.P. No. 1035.3 was adopted on February 14, 1996, and became effective July 1, 1996. Pa. R.C.P. No. 1035.3(a) provides that the adverse party may not rest upon the mere allegations or denial of the pleadings but must file a response setting forth the facts in dispute within thirty days after the service of the motion for summary judgment. "Summary judgment may be entered against a party who does not respond." Pa. R.C.P. No. 1035.3(d).

Rule 1035.3 permits entry of judgment for failure to respond to a motion for summary judgment but does not require it. Under the circumstances here, where PBS has submitted a filing that addresses the Commonwealth's Motion and the Commonwealth has shown no prejudice because of the form of PBS's response, we decline to enter summary judgment against PBS on this basis.

## II. Pa. R.C.P. No. 4007.1(e)

■ PBS first argues that the sworn testimony of Wuchina, the Commonwealth's Rule 4007.1(e) designee, establishes that there are no disputed issues of material fact regarding the allegations in the Commonwealth's Complaint and, in fact, demonstrates that PBS is entitled to judgment as a matter of law. Specifically, Wuchina was asked whether she knew of any consumers who purchased any of PBS's products under the mistaken belief that the product was affiliated with, or endorsed by, any government agency or program, and Wuchina answered "no" in each case. (Wuchina dep. at 46–58.) Wuchina also testified that she was unaware of any conduct by PBS that would violate the Telemarketing Act or its Do Not Call provisions. (Wuchina dep. at 59–60.) PBS maintains that, under Rule 4007.1(e), an organization must prepare its designee to give *binding* testimony on its

behalf. *Mellon Bank, N.A., v. Bank of Mid–Jersey,* 1992 WL 80800 (E.D.Pa. 1992); *Ierardi v. Lorillard, Inc.,* 1991 WL 158911 (E.D.Pa.1991) (stating, with respect to the federal equivalent of Rule 4007.1(e), that a named organization or government agency has an obligation to prepare its designee to be able to give *binding* answers on behalf of that party); *Graham v. I.M.O. Industries, Inc.,* 16 Pa. D. & C. 4th 492 (1992) (stating that testimony of a designated subordinate employee may be binding on a corporation under Rule 4007.1(e)). Thus, according to PBS, this court should accord Wuchina's testimony binding effect and preclude the Commonwealth from submitting and relying on contradictory evidence in its summary judgment filings. We disagree.

As the Commonwealth correctly notes, PBS raised this identical Rule 4007.1(e) argument in its January 6, 2006, Motion for Sanctions and for Preclusion of Evidence Against the Commonwealth.[10] Having denied that motion by order dated January 26, 2006, we will not grant summary judgment to PBS on this basis.

## III. Merits

### (a) UTPCPL Violations

■ The first three counts of the Commonwealth's Complaint allege generally that PBS's advertisements and solicitations are deceptive and misleading in violation of various UTPCPL provisions.[11]

---

**10.** At that time, the Commonwealth explained that this was a multi-state investigation handled entirely by Deputy and Assistant Attorney Generals of the various states in conjunction with various federal agencies. Because the investigation involved no one other than counsel for the Commonwealth, the Commonwealth asserted that it advised PBS of the limited scope of Wuchina's testimony in advance of her deposition. Further, the Commonwealth asserts that Pa. R.C.P. No. 4007.1(e) allows a named organization to limit the scope of its designee's testimony by setting forth "the matters on which each person will testify." The Commonwealth contends that it merely exercised that power in

order to protect privileged and confidential communications. In fact, the Commonwealth asserts that Wuchina could not testify about these protected matters even if she had been familiar with all aspects of the investigation. Pa. R.C.P. Nos. 4003.3 and 4011(c).

**11.** In Count I of the Complaint, the Commonwealth alleges, *inter alia,* that PBS violated section 2(4)(i) of the UTPCPL by engaging in deceptive and misleading representations concerning the sponsorship, endorsement or affiliation of its goods and services. Count II of the Complaint alleges, *inter alia,* that PBS violated sections 2(4)(ii), (iii), (v) and (xxi) of the UTPCPL by misrepresenting that: (1) re-

An act or a practice is deceptive or unfair if it has the "capacity or tendency to deceive." *Commonwealth ex rel. Zimmerman v. Nickel,* 26 Pa. D. & C.3d 115, 120 (1983). Neither the intention to deceive nor actual deception must be proved; rather, it need only be shown that the acts and practices are capable of being interpreted in a misleading way. Id. The test for the court is to determine the overall impression arising from the totality of what is said, as well as what is reasonably implied, in the advertisement or solicitation. *Commonwealth v. Hush–Tone Industries, Inc.,* 4 Pa.Cmwlth. 1 (1971); *Nickel.* In consumer protection cases brought in the public interest by the Attorney General, where establishing a violation hinges upon the content of the solicitations themselves, summary judgment may be granted without the need for extrinsic evidence and even in the presence of extrinsic evidence offered by the defense. *State by and Through McGraw v. Imperial Marketing,* 203 W.Va. 203, 506 S.E.2d 799 (1998); *Double Eagle Lubricants, Inc. v. Federal Trade Commission,* 360 F.2d 268, (10th Cir.1965). Moreover, we are cognizant of our supreme court's directive that the UTPCPL is to be construed liberally to effectuate its objective of protecting consumers of this Commonwealth from fraud and unfair or deceptive business practices. *Commonwealth by Creamer v. Monumental Properties, Inc.,* 459 Pa. 450, 329 A.2d 812 (1974).

■ Here, the Commonwealth contends that PBS has violated the UTPCPL as a matter of law because the tendency to confuse or mislead is readily apparent from the "four corners" of PBS's mailed referenced solicitations.[12] The Commonwealth asserts that the layout of these solicitations, along with the typeface, names, terminology, symbols and logos used in them, convey the false impression that PBS, or its goods and services, are somehow approved by or affiliated with, a government agency or program. For example, the solicitations contain statements about the recipient's "eligibility" for certain benefits, and they ask recipients to call and verify information "according to our records." In addition, the solicitations contain personal information, such as names and birthdates, which consumers expect to be held by a government agency. The Commonwealth also claims that the timing is relevant, where, in an attempt to take advantage of changes to the federal Medicare program, PBS issued its solicitations at the same time that legitimate government-sponsored programs were being marketed and promoted. Finally, the Commonwealth urges that because the net impression of PBS's solicitations and advertisements are capable of being interpreted in a misleading way, they should be construed against the advertiser, *Resort Car Rental System, Inc. v. Federal Trade Commission,* 518 F.2d 962 (9th Cir.1975), particularly where most recipients of these PBS solicitations are seniors, a particularly vulnerable audience. *Hush–Tone.*

cipients of PBS solicitations are entitled to federal or state benefits that they are not receiving; (2) there are limitations on the duration of or eligibility for PBS's offers; (3) PBS's discount cards, programs and/or memberships are insurance products; and (4) PBS's solicitations are, or contain information from, a health care provider. (Complaint, ¶ 132.) Count III of the Complaint alleges, *inter alia,* that PBS violated sections 2(4)(vii) and (xxi) of the UTPCPL by misrepre-

senting the savings to be had by consumers purchasing PBS's goods and services. (Complaint, ¶ 137.)

12. The Commonwealth refers to PBS's solicitations for the Senior Security Supplement Initiative, Senior Security Prescription Plan, Senior Security Dental Plan and Senior Rx Discount Program, attached as exhibits A, B, C, and D, respectively, to its amended motion for partial summary judgment.

The Commonwealth also points to several consumer complaints from persons indicating that they were "fooled" by PBS's marketing and found their solicitations "quite misleading," (Commonwealth's Motion, Exhibits F, H), and notes that these conclusions are supported by the Commonwealth's expert witnesses. (Commonwealth's Pre–Trial Statement, Reports of Sally B. Hurme, Michael F. Smith and Roger J. Cadieux, M.D.)[13] Further, in opposition to PBS's Motion, the Commonwealth offers the affidavit of marketing experts Michael L. Young, Ph.D., and Berwood A. Yost, M.A., to refute PBS's expert witness, Michael Mazis, Ph.D. Based on survey results, Dr. Mazis concluded that only a "statistically insignificant" number of persons who viewed PBS's marketing materials would believe that PBS's product was affiliated with the government. However, Dr. Young and Yost determined that multiple defects in Dr. Mazis' survey and analysis rendered his data unreliable and invalid. (Commonwealth's Pre–Trial Statement, Young/Yost Report.)

PBS counters that the "four corners" of PBS's solicitations do not establish a "capacity to deceive" as a matter of law. In fact, PBS argues that the advertisements and solicitations demonstrate that PBS's materials were truthful and non-misleading because they prominently identify the source of the mailing, display numerous disclaimers disavowing any government affiliation and utilize logos distinct from those used by the government.

Further, PBS maintains that the Commonwealth's "net impression" argument is directly contradicted by Dr. Mazis' survey results reflecting that only one percent of those asked to look at PBS's solicitations were confused by them, (PBS's Pretrial Statement, Appendix B), a conclusion echoed by Marvin E. Goldberg, Ph.D., another marketing expert, (PBS's Pretrial Statement, Appendix A), and by consumers who testified that they were never confused by PBS's solicitations. Although the Commonwealth produced two experts to criticize Dr. Mazis' methodology, PBS notes that, a third expert, J. Scott Armstrong, Ph.D., disagreed and described Dr. Mazis' survey as an "exemplary study." (PBS's Pretrial Statement, Appendix C.) Thus, according to PBS, the undisputed facts show that PBS's solicitations *do not* have the capacity to deceive, and PBS is entitled to judgment as a matter of law.

In the alternative, PBS argues that, even if we do not grant summary judgment in its favor, the Commonwealth is not entitled to summary judgment because PBS's evidence raises questions of fact regarding the alleged deceptiveness of PBS's advertisements and solicitations. We agree.

---

**13.** Hurme, a senior project manager for AARP Financial Security, opined that PBS's mailings give the overall impression to consumers, particularly older consumers, that they are official government mailings or concern a government program or benefit. (Hurme Report at 7.) Smith, an associate marketing professor, concluded that several elements of the marketing communications utilized by PBS were deliberately constructed to be ambiguous and, thus, could be construed as confusing to the average consumer or senior citizen. In particular, Smith cited PBS's use of the logo and the term "Social Security," PBS's use of personalization through a combination of the consumer's name and birthdate, and PBS's campaign to encourage enrollment without time for extended decision making. (Smith's Report at 2.) Dr. Cadieux opined that there is sufficient evidence to support the conclusion that a particular (cognitively impaired or medically challenged), but significant, segment of the adult and geriatric population would have been at risk to believe that they were being offered a government sponsored program that solicited their positive response to enroll. He further concluded that PBS's solicitations could represent a subtle form of financial elder abuse. (Dr. Cadieux's Report at 13.)

The marketing materials at issue contain various words and emblems evoking a government connection, but they also contain numerous clear disclaimers denying such a connection. Thus, we decline to hold that the solicitations at issue, on their face, display a capacity to deceive *as a matter of law.* Further, the extrinsic evidence offered by the parties provides no assistance here. As they did at the preliminary injunction stage of the proceedings, PBS and the Commonwealth each have submitted credible, yet conflicting, expert reports and consumer affidavits with respect to "what capacity, if any, the solicitation material has the capability to confuse the recipients of that material." (January 26, 2006, Memorandum Opinion and Order of Senior Judge Quigley at 2–3) (hereinafter Preliminary Injunction op.) Because this record does not persuade us that either party is entitled to summary judgment, we deny both the Commonwealth's Motion and PBS's Motion on Count I of the Complaint, and we deny PBS's Motion on Counts II and III of the Complaint.[14]

### (b) Telemarketing Act Violations[15]

#### 1. Registration Violation

Count IV of the Complaint alleges that PBS violated the Telemarketing Act by failing to register as a telemarketer,[16] or post the necessary surety bond,[17] before it initiated or received calls to or from consumers. A "telemarketer" is defined by section 2 of the Telemarketing Act as "[a]ny person or business which, in connection with telemarketing, initiates or receives telephone calls to or from a consumer in this Commonwealth, *or* when the person or business acting in connection with telemarketing is located within this Commonwealth when such calls are initiated or received." 73 P.S. § 2242 (emphasis added). In turn, "telemarketing" is defined as "[a] plan, program or campaign which is conducted to induce the purchase of goods or services . . . by use of one or more telephones and which involves more than one telephone call." *Id.*

 The Commonwealth first contends that PBS fits within this definition because PBS itself initiates or receives calls from consumers in connection with its plan, program or campaign, which is intended to induce consumers to purchase its discount prescription and medical care cards and/or memberships. The Commonwealth points out that PBS issues solicitations in which it displays toll-free numbers and invites consumers to contact it by phone; moreover, the Commonwealth asserts that PBS's own president, Brian Smith, admitted that the company takes calls from customers. (Commonwealth's Motion, Exhibit J.) The Commonwealth recognizes that PBS also

---

**14.** The Commonwealth does not seek summary judgment on Counts II and III of its Complaint; however, it argues that PBS is not entitled to summary judgment as to those Counts because there are genuine issues of material fact as to those claims. As with Count I, the parties presented conflicting evidence on the issues in Counts II and III; therefore, we agree with the Commonwealth.

**15.** A violation of the Telemarketing Act is also a violation of the UTPCPL. Section 6(a) of the Telemarketing Act, 73 P.S. § 2246(a).

**16.** *See* sections 3(a) and (b) of the Telemarketing Act, 73 P.S. §§ 2243(a) and (b). Togeth-er, these sections require a telemarketer or telemarketing business to register with the Attorney General at least thirty days prior to offering for sale goods or services through any medium, and make it unlawful for any telemarketer or telemarketing business to initiate or receive a telephone call from a consumer in connection with the purchase of consumer goods unless so registered.

**17.** *See* section 4(b) of the Telemarketing Act, 73 P.S. § 2244(b). The bond provides for the indemnification of any person suffering loss as the result of, *inter alia,* any violation of the UTPCPL by the principal. *Id.*

retains other entities to make and receive calls on its behalf, but the Commonwealth maintains that PBS cannot subcontract away its own obligations under the Telemarketing Act simply by hiring an outside firm for telemarketing duties. To the contrary, the Commonwealth argues that because PBS is headquartered in Pennsylvania when these third parties handle PBS's "telemarketing" calls, PBS still falls squarely within the definition of "telemarketer." 73 P.S. § 2242. Thus, the Commonwealth asserts that it is entitled to summary judgment on Count IV of the Complaint because PBS has neither registered as a telemarketer nor proven that it does not fit within this definition. Section 8 of the Telemarketing Act, 73 P.S. § 2248 (placing the burden of proving any such exemption or exception on the person claiming it).

PBS counters that the undisputed facts show that PBS was *not* required to register pursuant to the Telemarketing Act because it is *not* a "telemarketer" under the statute. Specifically, PBS argues that it did not "initiate or receive" *any* calls to consumers to "induce the purchase of goods or services"; instead, all such calls were handled by third parties, with outgoing calls initiated by Phase One and incoming calls received by West Interactive Corporation (WIC). Thus, PBS maintains that any duty to register under the Telemarketing Act was borne by Phase One and/or WIC.[18] According to PBS, the Commonwealth cannot characterize PBS as a telemarketer on the ground that it provides telephone numbers for consumers to call in connection with the purchase of PBS's goods or services because the Commonwealth fails to explain how such actions are connected to telemarketing. PBS also contends that the Commonwealth cannot rely on Smith's testimony to fit PBS within the statutory definition where that testimony was taken out of context and, indeed, was consistent with the fact that PBS conducted its telemarketing purely through third parties.[19]

Because resolution of the issue of PBS's status as a telemarketer turns on questions of material fact that remain in dispute, neither party is entitled to summary judgment on Count IV of the Complaint.

### 2. Do Not Call Violation

■ Count V of the Complaint alleges that PBS violated the Telemarketing Act, either directly or through Phase One, a third-party telemarketer acting on behalf of PBS,[20] by failing to obtain a list of

---

18. In its motion for summary judgment, PBS claims that its contract with Phase One required Phase One to comply with all telemarketing laws and that the Commonwealth failed to adduce any evidence to show that Phase One had not registered. Moreover, PBS claims that WIC was exempt from registration. (PBS's Motion at ¶¶ 50–59.) However, in its motion for summary judgment, the Commonwealth alleges that PBS, Phase One and WIC are not registered on the telemarketing database. (Commonwealth's Motion at ¶¶ 24–26; Exhibit K, Affidavit of Nichol Black.)

19. The definition of telemarketer excepts certain entities from these requirements, stating, *inter alia,* that for purposes of registration under section 3(a), "telemarketer" does not include a person or business soliciting business from prospective purchasers who have previously purchased from the business enterprise for which the person is calling where the business enterprise has been operating continuously for at least three years under the same business name. 73 P.S. § 2242. PBS also claims that, under this section, it is exempt from registration to the extent it solicits from those who have purchased from PBS previously.

20. The Telemarketing Act imposes responsibility and liability for calls made in violation of the Do Not Call provisions, not only on the entity making the call, but also on the entity causing the calls to be initiated. 73 P.S. § 2245.2(a).

subscribers to Pennsylvania's Do Not Call list and by contacting consumers who were registered on the Do Not Call list. Sections 5.2(a) and 5.2(b) of the Telemarketing Act.[21] The Commonwealth argues that there is no dispute that PBS retained Phase One to make calls on its behalf, that these calls were "telephone solicitation calls" under the Telemarketing Act, 73 P.S. § 2242, and that Phase One made more than 19,000 of these calls for PBS to over 4,000 persons on Pennsylvania's Do Not Call list, including Walter Theal.[22] (Commonwealth's Motion at ¶¶ 34–37; Exhibits L, N, O, and Q, Affidavits of Emily Watson, Neil Ross, Will Otto and Theal.) The Commonwealth contends that PBS's counter arguments are unavailing because PBS cannot establish that it was entitled to any exemption from the Do Not Call requirements based on established pre-existing business relationships with those called, 73 P.S. § 2242, or claims that the calls were the result of error, 73 P.S. § 2245.2(e)(4).

PBS counters that it, not the Commonwealth, is entitled to summary judgment on Count V of the Complaint based on its assertion that PBS is not a telemarketer within the meaning of that act. Moreover, PBS asserts that, even though it is not a telemarketer, PBS fully complied with the Do Not Call requirements. PBS contends that it did obtain copies of the Do Not Call list on a quarterly basis, (PBS's Motion, Exhibit S), which it turned over to Phase One along with a supplemental list com-

piled from consumers' direct requests to be removed from PBS's calling lists. In addition, PBS maintains that the Commonwealth's evidence in support of its claim is inadmissible and/or insufficient to show that PBS does not have a pre-existing business relationship with any persons Phase One called who are listed on the Do Not Call registry, 73 P.S. § 2242, or that any calls Phase One made to such persons were not the result of error. 73 P.S. § 2245.2(e)

However, this is not the Commonwealth's burden; rather, *PBS* must prove that it falls within these exceptions. 73 P.S. §§ 2242 and 2248. PBS has failed to do so and, therefore, is not entitled to summary judgment. We further conclude that PBS has raised sufficient factual issues to preclude the grant of summary judgment on this issue in favor of the Commonwealth, particularly in view of our determination that summary judgment is not properly granted in favor of either party on Count IV. Therefore, we deny both the Commonwealth's Motion and PBS's Motion with respect to Count V of the Complaint.

### (c) Fictitious Names Act Violation[23]

Count VI of the Complaint alleges that PBS failed to register names it uses in its marketing and advertising as fictitious names with the Pennsylvania Department of State, thereby violating section 303(b)(1) of the Fictitious Names Act, 54 Pa.C.S. § 303(b)(1).[24] The Commonwealth argues that there can be no dispute that

---

**21.** Added by the Act of April 2, 2002, P.L. 221, *as amended,* 73 P.S. §§ 2245.2(a) and (b).

**22.** In its brief in support of its summary judgment motion, the Commonwealth briefly mentions PBS's failure to obtain quarterly copies of the Do Not Call list; however, in the motion itself, the Commonwealth relies solely on the fact that solicitation calls were made to persons on the Do Not Call list and abandons its Count V allegation that PBS failed to ob-

tain a list of Do Not Call registrants. (Commonwealth's Motion at ¶¶ 30–38.)

**23.** Courts of this Commonwealth have held that violations of the Fictitious Names Act and other consumer protection related statutes constitute violations of the UTPCPL. *Peoples Benefit Services; Commonwealth v. Armstrong,* 74 Pa. D. & C.2d 579 (1974).

**24.** Pennsylvania law requires businesses to register as a fictitious name "[a]ny assumed or fictitious name, style or designation other

PBS violated that act by creating and employing fictitious names like Senior Security Supplement Initiative, Senior Security Dental Plan, Senior Rx Discount Program and Mature Americans Project in its solicitations and advertisements without registering those names. (Commonwealth's Motion, Exhibit R.) The Commonwealth contends that PBS uses these fictitious names to lure senior citizens from legitimate government programs designed to help them with health and drug needs.

However, according to PBS, no registration is required for the names cited by the Commonwealth because PBS does not use these names as substitutes for PBS's own business name but, rather, as a *brand name* for specific products or services sold by PBS. In fact, PBS points out that it places its actual corporate name on all of its solicitations, so that consumers can readily identify the company with which they are dealing. PBS argues that, in this way, it fully complies with the purpose of the Fictitious Names Act. *Fremd v. Horne*, 10 Pa. D. & C. 4th 321 (1990) (stating that the purpose of the Fictitious Names Act is to protect persons giving credit in reliance

on the assumed or fictitious name and to definitively establish the identity of the business owner to those who might have dealings with the concern).

After a careful examination of the record, we must conclude that material facts remain in dispute regarding whether the names in question are, or are not, subject to the registration requirements of the Fictitious Names Act. Therefore, we deny both the Commonwealth's Motion and PBS's Motion with respect to Count VI of the Complaint.

### (d) Social Security Act Violation and Postal Law and regulation claims[25]

Count VII of the Complaint alleges, *inter alia*, that PBS used words, symbols or emblems in its advertisements and solicitations that could lead one to believe that such advertisements or solicitations were endorsed by the Social Security Administration or that PBS had a connection with, or authorization from, the Social Security Administration, thereby violating section 1140 of the Social Security Act, 42 U.S.C. § 1320b–10.[26] Count VIII of the

---

than the proper name of the entity using such name." 54 Pa.C.S. §§ 302, 303(b)(1).

25. Violations of consumer-related statutes, such as the Social Security Act and postal provisions governing non-mailable matter, may constitute violations of the UTPCPL due to their unfairness and likelihood of confusing consumers. *Peoples Benefit Services; Commonwealth v. Percudani*, 844 A.2d 35 (Pa. Cmwlth.), *amended*, 851 A.2d 987 (2004); *Iron and Glass Bank v. Franz*, 9 Pa. D. & C.3d 419 (1978); *Commonwealth ex rel. Cowan v. Telcom Directories, Inc.*, 806 S.W.2d 638 (Ky. 1991).

26. In relevant part, section 1140(a)(1) states that no person may use, in connection with any item constituting an advertisement or solicitation . . .

(A) the words "Social Security", "Social Security Account", "Social Security Sys-

tem", "Social Security Administration", "Medicare", "Centers for Medicare & Medicaid Services", "Department of Health and Human Services", "Health and Human Services", "Supplemental Security Income Program", "Medicaid", "Death Benefits Update", "Federal Benefit Information", "Funeral Expenses", or "Final Supplemental Plan", the letters "SSA", "CMS", "DHHS", "HHS", or "SSI", or any other combination or variation of such words or letters, or

(B) a symbol or emblem of the Social Security Administration, Centers for Medicare & Medicaid Services, or Department of Health and Human Services . . . in a manner which such person knows or should know would convey, or in a manner which reasonably could be interpreted or construed as conveying, the false impression that such item is approved, endorsed, or authorized by the Social Security Adminis-

Complaint alleges that PBS mailed solicitations using terms or symbols that could be construed as having a federal government connection without the disclaimers required under the statutory and regulatory provisions of the United States Postal Service governing non-mailable matter. 39 U.S.C. § 3001(h); 39 C.F.R. § 111.1.[27]

The Commonwealth argues that there is no dispute that PBS violated the Social Security Act's provisions on direct mail solicitations in that, on their face, they feature various words, letters, symbols, names or emblems conveying the false impression that they were approved, endorsed or authorized by the Social Security Administration. In fact, the Commonwealth notes that, in reviewing materials bearing the Senior Security Supplement Initiative name and logo, PBS's own director of advertising compliance found the initials SSSI "too close to the Social Security Administration." (Commonwealth's Motion, Exhibit S.) Moreover, the Commonwealth points out that a government program familiar to seniors, Supplemental Security Income (SSI), has initials identical to those in PBS's Security Supplement Initiative (SSI). Finally, the Commonwealth reminds the court that, in December of 2005, the Social Security Administration announced an administrative action against PBS for PBS's violations of the Social Security Act, (Commonwealth's Motion, Exhibit T), which resulted in the assessment of a $4,349,972.00 judgment against PBS for solicitations in violation of the Social Security Act. (Commonwealth's Motion, Exhibit U.) Challenges to that assessment were dismissed on November 1, 2006. (Commonwealth's Motion, Exhibit V.)

Similarly, the Commonwealth argues that there is no dispute that PBS violated federal postal laws and regulations where PBS has distributed solicitations and advertisements that appear to have a government connection but include disclaimers that are inadequate because they are not in the requisite form and are not conspicuous enough to undo the impression created by the solicitation. 39 U.S.C. § 3001(h); 39 C.F.R. § 111.1.

PBS counters that it, not the Commonwealth, is entitled to summary judgment on the Commonwealth's Social Security Act and federal postal law claims. With respect to the alleged violation of the Social Security Act, PBS maintains that this is unlike those cases where a defendant used the exact words proscribed by the statute. *See e.g., National Federation of Retired Persons v. Social Security Administration,* 115 Fed. App'x. 763 (5th Cir. 2004) (finding a violation of the Social Security Act where mailers included numerous mentions of "SSA," "Social Security" and "SSI," and displayed images, such as the capitol building, typically associated with governmental bodies). Instead, the Commonwealth alleges only that PBS used terms and symbols "similar" to those used by the Social Security Administration, and the Commonwealth presents no evidence or authority to overcome the fact that PBS's materials do not use any words or symbols that *actually* are prohibited by section 1140 of the Social Security Act or

tration, the Centers for Medicare & Medicaid Services, or the Department of Health and Human Services....

42 U.S.C. § 1320b–10(a)(1).

**27.** Congress and the U.S. Postal service have adopted special protections for consumers from direct mail solicitations for the purchase of or payment for products from non-govern-

ment entities that look as if they are connected to, or approved by, the government, or if the solicitations use terms or symbols that could be construed as government related. Such solicitations must contain a very specific notice and large, bold, conspicuous disclaimers on both the outer envelope and in the body of the solicitation. 39 U.S.C. § 3001(h); 39 C.F.R. § 111.1.

that PBS's logo is not the logo used by the Social Security Administration or any other governmental entity.[28]

Likewise, under the Commonwealth's federal postal law claim, PBS again contends that that its mailings contain disclaimers indicating that PBS is not affiliated with the Social Security Administration or any government agency. In view of those disclaimers, PBS maintains that the Commonwealth adduces no evidence to show that PBS's advertisements could reasonably be construed as implying an affiliation with any federal government agency, as prohibited by 39 U.S.C. § 3001(h). Therefore, PBS maintains that it is not required to include the specific disclaimers required by the federal statute. *See United Commercial Insurance Services v. United States Postal Service.* 650 F.Supp. 592 (D.D.C.1986) (holding that where the solicitation could not reasonably be construed as a bill or invoice, as prohibited by 39 U.S.C. § 3001(d), the requisite statutory disclaimer was unnecessary).

As with Count I, the Commonwealth's entitlement to summary judgment under Counts VII and VIII depends on establishing as a matter of law that PBS's advertisements and solicitations have the capacity to deceive and confuse consumers by implying a government affiliation or endorsement and, therefore, constitute a *per se* violation of the UTPCPL. Of course, PBS's entitlement to summary judgment requires that it prove the contrary as a matter of law. As in Count I, we conclude that the question of whether PBS's advertisements and solicitations have a tendency to confuse or mislead recipients of the mailings depends on matters of material fact that remain in dispute. Thus, we deny summary judgment to both the Commonwealth and PBS in connection to Counts VII and VIII of the Complaint.

In sum, we agree with Senior Judge Quigley that it is apparent that PBS designed its advertising campaign with the intent to take advantage of the confusing changes to Medicare Part D and that PBS deliberately attempts to "push the envelope" with its marketing materials. (Preliminary Injunction op. at 3.) However, this does not necessarily mean that PBS's solicitations and advertisements are misleading and deceptive so as to constitute a violation of the UTPCPL, and, absent conclusive evidence establishing as much, we reject the Commonwealth's request to enjoin the marketing of a legal product. We also conclude that material facts remain in dispute as to whether PBS violated the Telemarketing Act, the Fictitious Names Act, the Social Security Act and the statutory and regulatory requirements governing mail solicitations in using the solicitations at issue.

Accordingly, we deny summary judgment to both the Commonwealth and PBS.[29]

---

28. According to PBS, the emblem attached is clearly distinguishable from the emblem used by the Social Security Administration, and the Social Security Act does not prohibit the use of "similar" emblems, but only use of the actual emblems or a variation thereof. *See* 42 U.S.C. § 1320b–10(a)(1)(B). Moreover, PBS maintains that its conspicuously placed disclaimers of affiliation with the Social Security Administration on all of its solicitations undermine any allegation that PBS's solicitations violate the Social Security Act.

29. We make one further observation. In ruling on the Commonwealth's preliminary injunction request, Senior Judge Quigley made the following statement.

Should this matter proceed to the merits, it is likely that some form of relief would be in order, whether that be in the form of a more prominent disclaimer, a change in language or logo or some other means. To that end, we urge the parties to discuss acceptable ways in which such changes could be made so as to lessen any confusion in [PBS's] materials.

*ORDER*

AND NOW, this 14th day of May, 2007, the amended motion for partial summary judgment filed by the Commonwealth of Pennsylvania, Acting by Attorney General Thomas W. Corbett, Jr., is hereby denied. Further, the motion for summary judgment filed by Peoples Benefit Services, Inc., is hereby denied.

(Preliminary Injunction op. at 3.) Were the parties to heed this good advice, people will be given the opportunity to decide whether they want to purchase PBS's goods and services without any confusion or undue influence. In this regard, we note that PBS has indicated that two of the four states involved

in the initial investigation have reached such an agreement with PBS and the third state was in negotiations to do the same, whereas the Commonwealth has rejected PBS's efforts to enter into settlement negotiations. (PBS's Pretrial Statement at 1–2.)